John LELSZ, et al., Plaintiffs-Appellees,

v.

John T. KAVANAGH, et al., Defendants-Appellees,

v.

THE PARENT ASSOCIATION FOR the RETARDED OF TEXAS, et al., Movants-Appellants.

No. 82–2164.

United States Court of Appeals, Fifth Circuit.

July 13, 1983.

---

B.F. Campbell, Jr., Dallas, Tex., H. Bartow Farr, II, Joel I. Klein, Washington, D.C., for movants-appellants.

Brenda J. Garrett, Dallas, Tex., David Ferleger, Philadelphia, Pa., Vicki L. Johnson, Dallas, Tex., for plaintiffs-appellees.

Martha Allan, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before GEE, REAVLEY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Parent Association for the Retarded of Texas and two residents of Texas institutions for the mentally retarded appeal from the denial of their motion to intervene of right in a class action brought by other residents of those institutions against state officials. Because we find that the district court, 98 F.R.D. 11, did not abuse its

discretion in holding the proposed intervention untimely, we affirm the order denying intervention and dismiss the appeal.

On November 27, 1974, several residents at Texas schools for the mentally retarded filed a class action against Texas officials, alleging that conditions at those schools violated their constitutional and statutory rights. In their complaint, they asserted:

By this proceeding Plaintiffs seek to vindicate, for themselves and for all members of the class they represent, their right to habilitation, the right to humane and decent living conditions, the right to procedural due process and fairness of admission, the right to an equal and adequate opportunity to realize their developmental capacities, the right to fair procedures in the determination of habilitative settings appropriate to their needs, and the right to habilitation in the least restrictive environment possible.

More specifically, the complaint asked that "Defendants be ordered ... to provide Plaintiffs with community based state-operated facilities for the mentally retarded which will so provide for the treatment of Plaintiffs in the least restrictive environment ..." Plaintiffs sought a class encompassing all residents at the institutions. They amended their complaint on May 15, 1975, to include additional named plaintiffs and defendants.

On March 5, 1976, six residents of the institutions and members of the putative class moved to intervene in order to argue that they had "no Constitutional right to habilitative care, much less habilitative care in the least restrictive setting ..." "[I]f such a right exists," the would-be intervenors added, "... the care provided by the State meets the Constitutionally compelled minimal standards." These residents also moved for an order that the suit not be maintained as a class action or, alternatively, that they be made class representatives.

Three years later, while the motion for leave to intervene was still pending, plaintiffs amended their complaint once again. In the preamble to this second amended complaint, plaintiffs reiterated that they "seek to enforce for themselves and all others similarly situated, the right to be free from state-imposed segregation, the right to receive treatment and habilitative services in the least restrictive environment and in the least restrictive manner, the right to a normalized living environment, the right to humane and decent living conditions, [and] the right to an equal and adequate opportunity to realize their developmental capacities ..." The lawsuit at this point had crystallized into a challenge to the conditions and operation of three state schools —Austin, Denton, and Fort Worth. Plaintiffs alleged that all residents of those institutions "could be discharged if appropriate alternative living arrangements with access to appropriate back up services were provided."

On July 9, 1981, the district court entered an order denying the motion to intervene. In its written statement of reasons, it indicated that the interests of the proposed intervenors were adequately represented by the defendants. *See* Fed.R.Civ.P. 24(a)(2). The district court invited the proposed intervenors' participation as *amici curiae*. An appeal from the district court's order was lodged, but was withdrawn on October 20, 1981.

After a hearing, the district court on August 5, 1981, certified a class consisting of all persons

(a) who are, or in the future are, residents of the Austin State School, Denton State School, or Fort Worth State School; (b) who have been residents of these three state schools since November 27, 1974 [the date of the filing of the original complaint]; or (c) who are, or in the future are, listed on the defendants' Registry for State School Placement.

The named plaintiffs were certified as class representatives.

On February 10, 1982, a motion to intervene was filed by Steven Ray Simms and Freda Snyder, two class members residing in the state schools, and by the Parent Association for the Retarded of Texas, an association of parents, relatives, and guardians of residents in the state schools. The proposed intervenors sought to strike what

they term a "middle ground" between the positions of the plaintiffs and the Texas officials. As they explained in their motion:

> Intervenors ... bring this complaint to require that defendants bring the Austin, Denton and Fort Worth State Schools into compliance with governing constitutional standards. Intervenors oppose, however, efforts to close the schools and to force transfer of all school residents into untested community facilities.

None of the three parties to this attempt at intervention were parties to the earlier attempt. Nonetheless, PART concededly funded the earlier attempt, and five of the six would-be intervenors belonged to PART. On April 2, 1982, the district court denied the second motion to intervene in a summary order without a hearing, and this appeal followed.

■ Because the order denying intervention did not specify the reasons for denial, we ordered a limited remand for this purpose. The district court responded with a twenty-four-page opinion that outlined two reasons for denying the motion—first, that the proposed intervenors' interests were adequately represented; and second, that the application was untimely. We now consider the proposed intervenors' appeal illuminated by the district court's statement of reasons.

Fed.R.Civ.P. 24(a)(2) provides:

> Upon a timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Supreme Court has outlined general principles to be applied in determining whether an application is timely:

> [T]he court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review.

*NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). In *Stallworth v. Monsanto Co.,* 558 F.2d 257 (5th Cir.1977), we distilled four factors to be considered in passing on the timeliness of a petition for leave to intervene:

> Factor 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene....
>
> Factor 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case....
>
> Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied....
>
> Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely...

*Id.* at 264–66.

■ We will review the denial of intervention here under the "abuse of discretion" standard and in light of these factors keeping in mind that *Stallworth* is not an algorithm, but a framework for analysis. As is often the case with such laundry lists, their precision is more apparent than real: one or more of the factors, as here, frequently is virtually open-ended.

■ We note at the outset that the proposed intervenors are class members. This does not mean that they may not intervene: we have recently examined the applicability of Fed.R.Civ.P. 24(a) to class actions and concluded that "intervention of right under Rule 24(a) and class action certification un-

der Rule 23 are two separate and distinct theories." *Woolen v. Surtran Taxicabs, Inc.,* 684 F.2d 324, 331 (5th Cir.1982). "[I]t is clear," we commented, "that the [Advisory] Committee contemplated that one who was already a class member could intervene in a lawsuit." *Id.* at 332. Yet the overlapping character of the inquiries into adequacy of representation suggests that when intervention of right is appropriate, class certification may also be called into question. Indeed, the proposed intervenors asserted at oral argument that if intervention were granted, they would move to decertify the class.

▆▆▆ The first *Stallworth* factor asks about the length of time during which the would-be intervenor knew or should have known of his interest in the case. Actual or constructive knowledge of the pendency of action is not by itself sufficient. 558 F.2d at 264. What the court must consider is "the movant's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case." *United States v. Marion County School District,* 590 F.2d 146, 149 (5th Cir.1979). *See also Jones v. Caddo Parish School Board,* 704 F.2d 206, 220 (5th Cir.1983).

More recently, in *Piambino v. Bailey,* 610 F.2d 1306 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980), we reversed a denial of intervention where the proposed intervenor had delayed only seventeen days after he "knew that his interests were no longer *adequately* represented ..." *Id.* at 1325 (emphasis added). This language was derived from the Supreme Court's decision in *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). There the Court held that a district court had erred in ruling untimely a motion to intervene by an alleged victim of sex discrimination who

had been excluded from a lawsuit when the district court declined to certify it as a class action but who had waited to apply for intervention until she learned that the named plaintiffs were not going to appeal the final judgment on the question of class certification. "In short," the Court remarked, "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests." *Id.* at 394, 97 S.Ct. at 2470.

Even if we are bound by this new twist that delay is to be measured from the time the intervenor realized that its interest was not adequately represented by existing parties rather than from the time it realized it had an interest,[1] the first *Stallworth* factor cuts against the proposed intervenors in this case. The pleadings exposed the nature of plaintiffs' claims from the very beginning. The original complaint asked that defendants be ordered to provide community-based facilities. Any contention that the proposed intervenors should not have been aware of their interest in the case, and aware that plaintiffs were not adequate representatives of it, rings hollow in view of the earlier attempt to intervene. That the first group of would-be intervenors attempted to intervene demonstrates their recognition of their interest. The proposed intervenors do not explain what shielded them from the same clear signals.[2]

The proposed intervenors argue that the case was "dormant" during the first five years of its existence and that it was not clear until after class certification in 1981 that the case "presented the kind of threat requiring appellants to take action to protect their interests." While these conten-

1. Elsewhere in *Piambino* the court simply repeated the earlier *Stallworth* language— "length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case ..." *Id.* at 1320.

2. We make these observations without looking into the ties between the two groups of intervenors. The proposed intervenors conceded at

oral argument that PART had funded the earlier attempt at intervention. The trial judge found "a close affinity between the P.A.R.T. applicants and the previous applicants for intervention." We, however, need not impute knowledge from the first set of intervenors to the second set in order to find that the latter should have known of their interest in the case at the time the original complaint was filed.

tions may have some bearing on the second *Stallworth* factor—prejudice to existing parties resulting from the delay—they have no bearing on the first. Under Fed.R.Civ. 24(a)(2), the issue is whether a party has an interest in the subject of the action, or perhaps whether that interest is unrepresented, not whether the lawsuit has arrived at the procedural stage, whatever that is, that it constitutes a "threat." Indeed, had the proposed intervenors pressed their concerns earlier, they might have been able to achieve their goals at the class certification hearing, perhaps by subclassing. The proposed intervenors' notion seems to be that one contemplating intervention is entitled to assume the aims of the parties with whom he disagrees will somehow be thwarted and hence he need not move to intervene. The Federal Rules of Civil Procedure do not countenance such an assumption.

The second *Stallworth* factor requires us to consider the prejudice that existing parties "may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case." 558 F.2d at 265. The district court found that "the parties have made substantial progress during the past six years (especially the last three years) in ways that will be upset and, perhaps, nullified if current applicants are now permitted to intervene as full parties." In particular, the trial judge noted that settlement negotiations were underway and could be disturbed if the proposed intervenors were granted leave to intervene.

In *Garrity v. Gallen,* 697 F.2d 452 (1st Cir.1983), the First Circuit applied the *Stallworth* factors, which it had adopted in *Culbreath v. Dukakis,* 630 F.2d 15, 20 (1st Cir. 1980), in upholding a district court's determination that the application of school districts and an association of school administrators to intervene in a lawsuit challenging conditions at a New Hampshire institution for the mentally retarded was untimely. In appraising the prejudice to existing parties, the court noted that intervention would both delay relief to the plaintiff class and compel defendants to expend additional public resources in an attempt to defend

their stand against plaintiffs on the one hand and the new intervenors on the other. 697 F.2d at 457. By the same token, it appears that intervention here would both prolong the lawsuit and increase its cost.

■ Yet it remains important to distinguish "any prejudice that would result by virtue of intervention," *Stallworth,* 558 F.2d at 265, from prejudice that results from *delay* in seeking intervention. In the shortfall the accommodation of additional parties almost invariably slows down litigation and makes it more costly. This alone, however, cannot be a basis for denying intervention of right. As we noted in *Stallworth,* Fed.R. Civ.P. 24(b), which deals with permissive intervention, authorizes the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties":

> Since a similar provision is not included in section (a) of the Rule, it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a). Therefore, to take *any* prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right.

*Id.* (emphasis in original). In the present case, we have trouble separating the harm to existing parties due to delay in seeking intervention from the harm attributable to intervention itself. The record does not affirmatively reflect how this lawsuit had progressed when the proposed intervenors moved to intervene in February 1982, other than to show that it was well past class certification. Apart from this significant fact, we are unable then to speak with confidence as to the impact of intervention or to measure the district court's findings.

*Stallworth*'s third factor requires us to examine the prejudice to the would-be intervenor if intervention is denied. As the district court noted, PART and its members have the option of filing *amicus curiae*

briefs. Further, the two proposed intervenors who are also class members may object to any settlement that in their view jeopardizes their interests. *See* Fed.R.Civ.P. 23(e). But, as we see it, critical to the third *Stallworth* inquiry is adequacy of representation. If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight. As we noted in *Piambino v. Bailey*, "[T]he question of timeliness is at least partially linked to the question of adequate representation." 610 F.2d at 1321. Thus, "[p]roper consideration of [the *Stallworth*] factors generally cannot be divorced from a consideration of the merits of a prospective intervenor's application . . ." *Id.*[3]

Adequacy of representation in turn depends on "how the interest of the absentee compares with the interests of the present parties." 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1909 (1972). We have repeatedly held that "interest" means a legally protected interest. Thus, where a would-be intervenor is not asserting a legal right of his own, but is advocating the pursuit of a particular policy, his interest will be deemed to be adequately represented by existing parties. For example, in *United States v. Perry County Board of Education*, 567 F.2d 277 (5th Cir.1978), where parents had sought to intervene in a desegregation proceeding to challenge the construction of two new school facilities, we upheld the denial of their motion for the following reasons:

> The parents are not seeking to challenge deficiencies in the implementation of desegregation orders . . . Nothing in their brief or in their petition for intervention in the district court indicates that they are challenging the location of the school on the ground that it impedes establishment of a unitary school system. Instead, they oppose the location on various policy grounds, which, though important, are unrelated to desegregation and the establishment of a unitary school system.

*Id.* at 279–80. We reasoned that so long as the parents' concerns were limited to matters of policy, their interests were adequately represented by the Board of Education. *Id.* at 280. *See also Valley v. Rapides Parish School Board*, 646 F.2d 925, 941 (5th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982); *United States v. Marion County School District*, 590 F.2d at 148.

The district court found that the proposed intervenors' disagreement with the plaintiffs over the benefits of community-based facilities amounted to a difference of policy. Relying on the school desegregation cases, the court deduced that these concerns were adequately represented by the defendant state officials. But we are not so comfortable with such a facile distinction of "policy" and right. Regardless, the proposed intervenors maintained that they favored improvements in the state institutions as part of their *right* to effective care and treatment. The district court did not dispute that this interest was legally cognizable, but found that it was adequately represented by *plaintiffs.*

PART and its partners in attempted intervention now make two points before us: first, they contend that the district court's solomonic solution is flawed because their interest in adequate care and treatment cannot be adequately represented by plaintiffs, who have an incentive to downplay correctable deficiencies within the schools; second, they maintain that they have a legal right *not* to be placed in community-based facilities, and that this interest is currently unrepresented in the proceeding.

Viewed in isolation, these are serious interests that might well justify intervention of right, assuming the other requirements of Fed.R.Civ.P. 24(a)(2) were met. The proposed intervenors, however, did not forcefully advance either argument until rather late in the game, that is, long after their belated motion to intervene had been filed

---

**3.** Some commentators have voiced concern that the discretion imbedded in the timeliness requirement may end up converting intervention of right into permissive intervention. *See, e.g.,* Note, "The Timeliness Threat to Intervention of Right," 89 Yale L.J. 586, 596–97 (1980). To the extent that the timeliness requirement tracks the other prerequisites to intervention of right, such as adequacy of representation, this concern should be allayed.

and while their appeal was pending before this court. For the first time at oral argument the proposed intervenors asserted that the right to effective care and treatment encompasses a right *not* to be placed in a community-based facility.[4] While the contention that only proposed intervenors have an adequate incentive to expose correctable deficiencies in the schools and vindicate this aspect of the right to care and treatment was raised earlier, the only reference in proposed intervenors' complaint to this right, as the district court noted, was a formal incorporation of portions of plaintiffs' complaint.

In sum, we have a situation where the proposed intervenors seem to be serving as advocates for what now appear to be unrepresented interests, but a number of circumstances call into question their attachment to those interests. PART paid for the earlier attempt at intervention, which was frankly aligned with the defendants in the case. After this motion was denied on the ground that the would-be intervenors' interests were adequately represented by Texas officials, PART came back with a motion that formally incorporated portions of plaintiffs' complaint. Now that the district court has ruled that PART's interests are adequately represented by defendants *and* plaintiffs, we have become the first in this case to be told by PART that the mentally retarded have a *right* to an institutional setting.

Again, we do not minimize the importance of these interests. Our only point is that the district court, in analyzing the prejudice that would befall the proposed intervenors from being excluded from the lawsuit, was entitled to be skeptical about the proposed intervenors' commitment to them. We are aware that a settlement of this class action has been submitted to the district court. Nothing we say is meant to forecast how we would decide the adequacy of representation issue in the context of an objection to that settlement. We simply note that the district court, in passing on the timeliness of the would-be intervention, was justified in discounting the potential prejudice to PART and the other two proposed intervenors, one of whom was past president of PART.

The final *Stallworth* factor is the presence of "unusual circumstances." The proposed intervenors do not argue that there are any here that would warrant granting their motion. To be sure, the lawsuit here is not a traditional private law action but is an example of what Professor Chayes has called "public law litigation." *See* Chayes, "The Role of the Judge in Public Law Litigation," 89 Harv.L.Rev. 1281 (1976). The importance of according representation to diverging interests in such a "structural" lawsuit cannot be overemphasized. *Id.* at 1310.[5] Yet the current version of Fed.R. Civ.P. 24(a)(2), and the *Stallworth* factors, were formulated with just this sort of "public law" case in mind. The timeliness requirement reflects an awareness that even structural lawsuits must come to an end at some time.

In conclusion, we believe that the district court's weighing of relative prejudice, *see United States v. Marion County School District,* 590 F.2d at 148, was not an abuse of discretion. In one case we have suggested that a "great and undisputed delay" of "over four years" was by itself a sufficient

---

**4.** The district court made the observation, accurate at the time, that "intervenors do not claim any legal right to a large institutionalized setting...."

**5.** As one perceptive commentator has noted, the enthusiasm of the federal judiciary for due process has not always extended to district court proceedings in "structural" cases:

> At the same time that appellate judges were improvising such elaborate safeguards for regulatory decision-making, individual district court judges were taking on the direct management of school districts, mental hospitals, and prisons. In such cases of direct judicial administration, the judges appointed expert consultants and heard community 'representatives' only as they pleased—and proceeded to ignore their advice as they pleased. And when such cases were appealed, the appellate judges invariably deferred to the district judge's mastery of the 'complex factual circumstances,' rarely subjecting remedial orders and implementing procedures to any serious scrutiny.

Rabkin, "The Judiciary in the Administrative State," Pub. Interest, Spring 1983, at 62, 79.

basis for a district court's denial of leave to intervene. *United States v. State of Louisiana,* 669 F.2d 314, 315 (5th Cir.1982). The delay here was at least six years. This circumstance, combined with the earlier stop-and-start efforts of PART and the slippery character of their assertedly distinct unrepresented interests, prevents us from finding that the district court's ruling of untimeliness was an abuse of discretion. Finally, we note that our decision is made against the background of a pending settlement the appropriateness of which proposed intervenors are contesting. That contest will generate a record that may shed more light on the relative identities of the claims. We caution that such public litigation requires the presence of affected persons by adequate representatives. Attempting to define as a single juristic unit all consumers of state habilitation service for the retarded places Rule 23(b)(2) under great strain. That a few persons aided by sophisticated counsel assert a common goal does not prove its existence. We are wary, but for now are persuaded that the best course is to not interfere with the district court in its effort to manage this case. We will look again should, as it now appears, any settlement approval be contested.

Under this circuit's "anomalous rule," when we find that the district court properly denied an application for intervention of right, our jurisdiction evaporates, and we must dismiss the appeal for want of jurisdiction. *Stallworth v. Monsanto Co.,* 558 F.2d at 263. *See also Jones v. Caddo Parish School Board,* 704 F.2d at 222. Accordingly, we do so here.

APPEAL DISMISSED.