**GETTY OIL COMPANY**

v.

**DEPARTMENT OF ENERGY, et al.**

No. 3–52.

Temporary Emergency Court of Appeals.

Argued May 4, 1988.

Decided Oct. 14, 1988.

Phillip P. Kalodner, Philadelphia, Pa., was on the brief for Appellants Utilities, Transporters and Manufacturers.

Andrew P. Miller, Dickstein, Shapiro and Morin, Washington, D.C., with whom Milton B. Whitfield and J. Bradley Ortins of the same firm, were on the brief for Appellee States Delaware, Iowa, Louisiana, North Dakota, Rhode Island and West Virginia.

Neil F. Hartigan, Atty. Gen., and Michael J. Hayes, Deputy Atty. Gen., Chicago, Ill., were on the brief for Appellee State of Ill.

Dave Frohnmayer, Atty. Gen., and Donald C. Arnold, Chief Counsel, Dept. of Justice, Salem, Or., were on the brief for Appellee State of Or.

LeRoy S. Zimmerman, Atty. Gen., and Eugene F. Waye, Deputy Atty. Gen., Harrisburg, Pa., were on the brief for Appellee Commonwealth of Pa.

Bernard Nash, Edward G. Modell and Eileen P. Shannon, Nash, Railsback & Plesser, Washington, D.C., were on the brief for Appellee States Hawaii, Ill., Kan., Neb., Nev., N.C., Guam and the Virgin Islands.

James F. Flug and Paula Dinerstein, Lobel, Novins, Lamont & Flug, Washington, D.C., were on the brief for Appellee States

Ala., Cal., Conn., Idaho, Ind., Md., Mich., Miss., Mont., Ohio, S.D., Vt., Wis. and Wyo.

John Van de Kamp, Atty. Gen., and Yeoryios C. Apallas, Deputy Atty. Gen., San Francisco, Cal., were on the brief for Appellee State Cal.

Gilbert T. Renaut, Office of Judicial Litigation, Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., with whom Theodore A. Miles, Don W. Crockett and Paul M. Geier of the same office, were on the brief for Appellee U.S. Dept. of Energy.

Before GRANT, PECK and METZNER, Judges.

GRANT, Judge.

Before this court is an appeal from a denial of intervention in *Getty Oil Company v. United States Department of Energy* by the United States District Court for the District of Delaware. Appellants have challenged the court's determination that the requirements for intervention of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure have not been met. For the following reasons we affirm the district court's judgment.

## I. *Background*

Appellants are a group of six electric utility companies, fourteen shipping companies and four paper manufacturers (Utilities, Transporters and Manufacturers)[1] who filed a motion to intervene in the district court proceeding reviewing the De-

partment of Energy's (DOE) decision concerning restitution of crude oil overcharges from Getty Oil Company (Getty). Appellants sought intervention limited to the issue of the proper distribution of the overcharges. The district court denied both intervention of right and permissive intervention.

The circumstances underlying DOE's restitutionary remedy, described in detail in the district court's opinion, *Getty Oil Co. v. United States Department of Energy*, 117 F.R.D. 540 (D.Del.1987), grew out of agreements made in May of 1973 between Getty and Standard Oil to buy and sell crude oil. The Federal Energy Administration, which preceded DOE, found violations of certain price ceiling regulations and issued a Remedial Order on August 12, 1976. The Office of Hearings and Appeals (OHA) affirmed the order, including its calculation of petroleum overcharges, and further assessed prejudgment interest against Getty.

After determining that it was impossible to identify by reasonable means the persons who were adversely affected by the Getty overcharges, OHA adopted a remedy of remitting the entire amount of the overcharges directly to the United States Treasury. The district court affirmed DOE's plan as to all major issues.[2] This appellate court likewise affirmed Getty's liability and upheld the restitutionary policy proposed by OHA.[3] However, it rejected the proposed transfer directly to the federal government.[4] Rather, it directed the dis-

---

**1.** The *Utilities* are Consolidated Edison Co. of New York, Inc., Southern California Edison Co., Long Island Lighting Co., Pacific Gas & Electric Co., Orange and Rockland Utilities Inc. and San Diego Gas and Electric Co. The *Transporters* are Yamashita–Shinnihon Steamship Co. Ltd., Nippon Yusen Kaisha, Japan Line Ltd., n.v. Bocimar s.a., Star Shipping A/S, Globe Trade and Transport Co. Ltd., Showa Line Ltd., Island Navigation Corp. (Ship Management) Ltd., Kawasaki Kisen Kaisha Ltd., Mitsui O.S.K. Lines Ltd., Daichi Chuo Kisen Kaisha, Flota Mercante Grancolombiana S.A., and Shinwa Kaiun Kaisha Ltd. The *Manufacturers* are Champion International Corp., Weyerhauser Co., Federal Paperboard Co. Inc., and International Paper Co.

**2.** *Getty Oil Co. v. United States Department of Energy* (TECA 1984), 569 F.Supp. 1204 (D.Del. 1983), aff'd, (*Getty I*), 749 F.2d 734.

**3.** *Getty Oil Co. v. United States Department of Energy (Getty I)*, 749 F.2d 734 (TECA 1984).

**4.** During this period of time, the Temporary Emergency Court of Appeals, reviewing many regulatory violations, had criticized DOE's assertion that it was impossible to identify overcharge victims. In *Citronelle–Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717 (TECA 1982), we placed on the government a duty to try to find those victims and to provide refunds (plus interest) to them. Reaching a similar conclusion in *Getty I*, this court ordered that the escrowed funds be held by the court rather than the government until DOE established a refund procedure for individual victims. 749 F.2d at 739.

trict court to establish an account for the overcharge funds pending final distribution, and directed DOE to reconsider the proper remedial disposition of the monies, taking into account the rights that any party, including proposed intervenors, may have. That escrowed account, which held almost $180 million as of June 30, 1987, is called the "$180 Million Fund."

DOE, which had been drafting regulatory procedures for curing the many violations of oil price control legislation, established Subpart V regulations to provide petroleum overcharge victims with a method of claiming entitlement to refunds. The TECA mandate that DOE attempt to identify those overcharge victims, and the pending distribution of a multi-billion dollar overcharge fund in the *Stripper Well Exemption Litigation*, M.D.L. 378 (*Stripper Well*), led to the development of more refined restitutionary procedures for distribution to individual victims. After years of negotiations leading ultimately to a settlement among the federal government, the state governments, and many private petroleum purchasers in *Stripper Well*, the Kansas district court approved a Final Settlement Agreement on July 7, 1986. That Agreement contained two provisions affecting the *Getty* case before us today. The first was a declaration that DOE would publish a Modified Policy concerning pending and future overcharge distributions to private claimants, based upon the procedures established pursuant to the existing Subpart V refund regulations. *Stripper Well* Agreement at IV.B.1. The second provision stated that DOE's modified restitutionary policy would be applied to the *Getty* overcharge refund as well as to the *Stripper Well* funds.

The matters in *Getty Oil Co.*, OHA Case No. HRR–0074 (and related cases), concerning the yet undermined issues of

liability remanded by the District Court in *Getty Oil Co. v. DOE*, C.A. No. 77–434 (D.Del.), are excluded from this Agreement, provided, however, that to the extent the funds arising out of such matters are determined to be Alleged Crude Oil Violations funds, the provisions of paragraph IV.B. hereof shall apply.
*Stripper Well* Agreement at III.B.6.

On August 20, 1986, DOE issued an Order implementing its Modified Statement of Restitutionary Policy, which would be applied to all pending and future Subpart V cases. The policy established the apportionment of an overcharge fund: 20% would be reserved for private claims and 80% would be divided equally between the federal government and the States.

During this same time period, Congress enacted the Petroleum Overcharge Distribution and Restitution Act (PODRA), 15 U.S.C. §§ 4501–07, which affected any funds recovered for violations of the Emergency Petroleum Allocation Act (EPAA) and the Economic Stabilization Act (ESA). However, the Act explicitly excluded the *Stripper Well* settlement funds from its control.[5] 15 U.S.C. § 4501(c)(2).

During this period of general policymaking concerning overcharge refunding, the *Getty* case was pending. While reconsidering its restitutionary policy in this case, DOE received comments from private parties and permitted some individual utility, transporting and manufacturing companies to intervene in its administrative process. On July 17, 1986, DOE issued its decision concerning distribution of the $180 Million Fund. 14 DOE ¶ 83,033 (1986). Applying the procedures and allocations developed in the *Stripper Well* Agreement, it gave individual injured claimants the opportunity to file under the Subpart V regulations for a

---

5. 15 U.S.C. § 4501 establishes the procedure for the disbursement of funds collected as restitution for violations of the Economic Stabilization Act and its subsequent regulations. However, the legislation explicitly excludes certain amounts held in escrow. The exclusion pertinent to this cause is described in section 4501(c)(2):

(c) Subsection (a)(2) does not apply to—(2) any amount to which any person or class of persons has an enforceable right, created or vested, or governed by the terms and conditions of the settlement approved on July 7, 1986, in In Re: the Department of Energy Stripper Well Exemption Litigation, M.D.L. No. 378, in the United States District Court for the District of Kansas.

refund out of the 20% of the Fund reserved for private restitution.

Appellants Utilities, Transporters and Manufacturers were neither parties nor participants in the district court *Getty* decisions, the DOE administrative proceeding herein, or the *Stripper Well* Agreement. They sought to intervene in the district court's review of the DOE plan of distribution so that they could place two concerns before the court: first, that the 20% reserve for private claimants may be insufficient; and second, that their claims should cover all overcharges they sustained.

## II. *The District Court's Decision*

On August 21, 1987, Chief Judge Schwartz of the District Court for the District of Delaware denied the motion of Utilities, Transporters and Manufacturers for intervention, but granted their motion to file briefs as *amici curiae.* 117 F.R.D. at 550.

In its thorough Memorandum Opinion, the court held that appellants did not have a "legally cognizable interest" under section 209 of the ESA, under PODRA, or under the *Stripper Well* Agreement, that would entitle them to intervention of right. *Id.* at 547–49. Nor was the court willing to permit intervention in its discretion. It noted that, since individual claims have not yet been considered, these proposed intervenors have only an attenuated interest now. However, the court recognized that *amicus* briefs reflecting appellants' position on the remedial issue would offer an additional view to aid the court's review of DOE's decision. Accordingly, it granted their motion to appear as *amici curiae.*

## III. *Issues on Appeal*

We are asked to consider whether the district court erred in denying intervention of right to Utilities, Transporters and Manufacturers. Appellants assert that the district court should allow intervention just as OHA permitted the intervention of private claimants in the administrative process. According to appellants, TECA case law does not mandate nonintervention: and that, although previous TECA decisions have affirmed the denial of intervention to challenge a consent order which denied the proposed intervenors' right to restitutionary funds, this court has never refused intervention in a settlement in which intervenors seek to protect a right to funds recognized by OHA. Furthermore, they contend, TECA's ruling in *Getty I* that the district court consider the possible "rights" to restitution of *all* parties, including intervenors, was based upon the section 209 mandate of restitution, the exact section upon which the district court now bases its denial of intervention.

Appellants argue that the district court erred in finding that they do not have a legally cognizable interest arising out of the *Stripper Well* Agreement, PODRA, or Rule 24. Under their analysis, both the Settlement Agreement and PODRA refer to the "interests" of potential claimants, and Rule 24 mandates intervention when an applicant "claims an interest relating to the property," as appellants assert concerning the $180 Million Fund. Moreover, they insist that they have more than a claim of interest; they have an expectancy of an economic benefit in the distribution of the Fund.

## IV. *Standard of Review*

■ The denial of a motion to intervene under Rule 24(a)(2) is an appealable final decision. *Marino v. Ortiz,* —— U.S. ——, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988). However, the circuits are not in agreement on the scope of appellate review.

In *NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973), the Supreme Court has established that a district court's ruling on the timeliness of a Rule 24(a) application for intervention will not be disturbed on review unless there is an abuse of discretion. 413 U.S. at 365–66, 93 S.Ct. at 2602–03. Both the Second and Third Circuits have extended the abuse of discretion standard to apply to all Rule 24(a)(2) determinations. The Second Circuit has justified "this more relaxed standard of review" by explaining that:

the great variety of factual circumstances in which intervention motions must be

decided, the necessity of having the 'feel of the case' in deciding these motions, and other considerations essential to a flexible reading of 24(a)(2), particularly in government enforcement actions, are precisely those which support an abuse of discretion standard of review. *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984). However, the court also stated, at the conclusion of its intervention analysis, that it would "not upset the district judge's determination unless he has applied an improper legal standard or reached a decision that we are confident is incorrect." *Id.* at 992. The Third Circuit has followed *Hooker Chemicals* in adopting both the abuse of discretion standard and the more stringent "improper legal standard" test together. *See Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987).

In contrast, however, the Fifth and Ninth Circuits have considered the Rule 24(a)(2) requirements other than timeliness to be questions of law, and thus have found that the district court's conclusions about them are freely reviewable. *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 61–62 (5th Cir.1987); *Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir.1987). The First Circuit, also faced with questions of law, has described the proper scope of review to be "whether the court committed legal error in denying intervention." *Flynn v. Hubbard*, 782 F.2d 1084, 1086 (1st Cir.1986). On the other hand, the D.C. Circuit reviews the district court decision on intervention of right by the clearly erroneous standard and on permissive intervention by the abuse of discretion standard. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C.Cir.1981).

From these variously expressed scopes of review, we glean and adopt a sensible blend: To the extent that a district court's conclusions involve questions of law, we will review them *de novo;* to the extent

that they concern factual details and pragmatic consequences of its decision, however, we will follow the Supreme Court's abuse of discretion standard.

### V. *Intervention*

Appellants assert that they have a right to intervene in the litigation between the Department of Energy and the States. Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right in a federal court suit. In pertinent part[6] it states:

(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, a nonparty has an absolute right of intervention when it satisfies each and every requirement of Rule 24(a)(2): timeliness;[7] sufficient interest in the litigation; an impairment of its ability to protect that interest; and inadequate representation by a party to the suit. *Mothersill D.I.S.C. Corp.*, 831 F.2d at 61.

The district court denied intervention on the ground of insufficient interest: The would-be intervenors had not demonstrated a "legally cognizable interest" in the underlying action. 117 F.R.D. at 548. That definition of the type and sufficiency of interest required for intervention of right has arisen from the case law that developed around Rule 24 in the absence of the Rule's own offering of a more precise explanation. The Supreme Court has stated that an applicant's interest must be "sufficient," *Trbovich v. Mine Workers*, 404 U.S. 528, 538, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972)

**6.** There is no statutory right of intervention involved herein; therefore Rule 24(a)(1) is inapplicable.

**7.** Although the States and DOE challenged the timeliness of appellants' motion for intervention, the district court chose to dispose of the motion on other grounds. Consequently, we do not reach the merits of this argument.

and "significantly protectable," *Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 1706, 90 L.Ed.2d 48 (1986), quoting *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). The Courts of Appeals have, for the most part, adopted the requirement carefully honed by Judge Skelly Wright in *Hobson v. Hansen,* 44 F.R.D. 18 (D.D.C.1968), that intervention of right requires "a direct, substantial, legally protectable interest in the proceedings." 44 F.R.D. at 24. *See, e.g., Panola Land Buying Ass'n v. Clark,* 844 F.2d 1506, 1509 (11th Cir.1988); *Mothersill D.I.S.C. Corp.,* 831 F.2d at 62; *Harris v. Pernsley,* 820 F.2d at 596; *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

■ In practice, it is widely recognized that Rule 24 was intended to give courts the power to resolve intervention disputes pragmatically by considering "all the competing and relevant interests raised by an application for intervention." *Harris v. Pernsley,* 820 F.2d at 597, quoting *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d at 983. Courts may consider the practical consequences of the litigation in passing on an application to intervene as of right. *Harris v. Pernsley,* 820 F.2d at 601.

■ To determine whether a potential intervenor has a legally protectable interest in the proceedings, we look to substantive law. *Mothersill D.I.S.C. Corp.,* 831 F.2d at 62, citing *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 464 (5th Cir.1984) (en banc), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *Harris v. Pernsley,* 820 F.2d at 597. Appellants assert a legal interest based upon three sources: the restitutionary rights encompassed in the Economic Stabilization Act; the *Stripper Well* Agreement; and PODRA.

■ The proceeding in which applicants have attempted to intervene is the court's review of DOE's restitutionary plan. The statutory basis for the DOE administrative proceeding and its counterclaims is section 209 of the Economic Stabilization Act, 12 U.S.C. § 1904, which establishes the government's enforcement authority to vindicate public interests and authorizes actions to enjoin practices that violate its regulations. Appellants claim that their interest arises from the section 209 mandate of restitution and the TECA mandate that the district court reconsider the possible rights of intervenors to restitution.

This court has consistently held that governmental enforcement actions brought under section 209 of the ESA are separate and distinct from the actions of private entities brought pursuant to section 210, and are not to be mingled in one proceeding. *United States v. Exxon Corp.,* 773 F.2d 1240, 1283 (TECA 1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986). *See also Bulzan v. Atlantic Richfield Co.,* 620 F.2d 278, 282 (TECA 1980); *DeRieux v. Five Smiths, Inc.,* 499 F.2d 1321, 1337 (TECA 1974), *cert. denied,* 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). Since private would-be intervenors are afforded a statutory remedy under section 210 to recover over-charges, they may not intervene in DOE's enforcement proceeding. *Payne 22, Inc. v. United States,* 762 F.2d 91, 93 (TECA 1985). *See Citronelle–Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 722 (TECA 1982), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed. 2d 141 (1982).

Although appellants concede TECA's many rulings, affirming the denial of intervention, they assert that the appellate court has never affirmed such a denial "where its purpose is to support an administrative action which recognizes a right in the intervenor."

A private party's "right" to some benefit as a consequence of the overall restitution of petroleum overcharges does not confer a legal right to intervene in a DOE action seeking enforcement of public rights. Such an enforcement of a remedial restitution is the exclusive right of the government. *Ashland Oil, Inc. v. Dep't of Energy,* 760 F.2d 298, 303 (TECA 1985). Private parties have no interest in a public enforcement action, within the meaning of Rule 24(a)(2), that will be impaired by dis-

position of that action. *Cities Service Co. v. Dep't of Energy*, 715 F.2d 572, 574 (TECA 1983). We see no reason in this case to stray from this court's long line of prior rulings distinguishing between public and private actions under the ESA and affirming the denial of intervention of private entities in a section 209 agency action.

Appellants also claim that the *Stripper Well* Agreement created a legal interest sufficient to support intervention. They assert that the parties to the Agreement have admitted, by executing the Agreement, the "interest" of potential claimants, and that such an interest is sufficient to support intervention.

As we stated above, a private nonparty's interest in some ultimate restitutionary benefit under a remedial plan does not confer a legal right to intervene in the public enforcement action of the Economic Stabilization Act. Nor does a nonparty's right as a potential claimant for restitution under an Agreement created under the ESA rise to the level of a right to intervention. "[A]n economic interest [that might be adversely affected by the outcome of the case] alone is insufficient" to warrant intervention under Rule 24(a)(2). *State of Texas v. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir.1985), quoting *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d at 466. The Supreme Court's refusal in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975), to grant enforcement rights to nonparties to a consent decree, "even though they were intended to be benefited by it," is fully applicable to the case before us.

Even more to the point is Paragraph VI.B. of the Agreement, which explicitly provides that it "confers no ... enforcement rights upon any non-Party" to the Agreement. Since appellants herein were not parties to the Agreement, they can claim no legally protectable interest pursuant to that Agreement.

Appellants finally argue that PODRA's instruction to include restitution to injured private persons in an overcharge distribution plan vests them with a right to intervene. However, as the district court succinctly pointed out, PODRA dictates the method of distribution of funds covered by the Act. The legislation itself specifically excludes from its coverage any funds governed by the *Stripper Well* Agreement.[8] The funds in this case are so governed; therefore, PODRA confers no legally cognizable interest in appellants sufficient to create a right to intervene.

This court finds that appellants have not shown a direct, substantial, legally protectable interest in the proceedings. Failure to meet any one of the Rule 24(a)(2) requirements results in the denial of intervention. *See Farmland Dairies v. Commissioner, N.Y. Dept. of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir.1988); *Mothersill D.I.S.C. Corp.*, 831 F.2d at 61. However, the court notes further that it has found petitioner's interest to be adequately represented by the parties herein, for those parties share the same ultimate goal of distribution of overcharge funds to all injured claimants, parties and nonparties alike. *See, e.g., Bradley v. Milliken*, 828 F.2d 1186, 1192–93 (6th Cir.1987). Moreover, to the extent appellants believe that their interests have not been adequately represented, they have been able to present those views to the court in the form of *amicus* briefs.

### Conclusion

Our review of the legal bases upon which appellants assert their right to intervene confirms the district court's careful analysis and decision that appellants lack the requisite interest under ESA, PODRA, and the *Stripper Well* Agreement. Although they may have the right to assert a claim outside this proceeding, they have no direct interest in this court action, either under the statutory schemes created by section 209 of the ESA and by PODRA, or under the terms of the Agreement that has become the foundation of the *Getty* restitutionary plan. Moreover, their purpose in intervening, (*i.e.*, in order to express their concerns that the reserve fund may be

---

**8.** *See* footnote 5, *supra*.

insufficient and that that the reimbursement calculations may not be as inclusive as they would prefer) is not substantial. In conclusion, we find that appellants have no direct, substantial, legally protectable right in the $180 Million Fund that would entitle them to intervene.

Despite their lack of a legally cognizable interest herein, the district court permitted appellants to be heard as *amici curiae*, thereby allowing them to contribute to the court's understanding of the consequences of the settlement proposed by the parties. *Harris v. Pernsley*, 820 F.2d at 603. When a nonparty presents no new questions, it "can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *State of Texas v. Dep't of Energy*, 754 F.2d at 553, quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir.1984).

Accordingly, the decision of the district court to deny appellants' motion to intervene is AFFIRMED.