**GETTY OIL COMPANY, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, et al.,**
**Defendants–Appellees,**

v.

**CONSOLIDATED EDISON CO., et al.,**
**Movants–Appellants.**

**No. 3–54.**

Temporary Emergency Court of Appeals.

Submitted on the Briefs.

Decided Oct. 30, 1989.

Philip P. Kalodner, Philadelphia, Pa., was on brief for appellants Consolidated Edison Co. of New York, Inc., Southern California Edison Co., Long Island Lighting Co., Pacific Gas & Elec. Co., Orange and Rockland Utilities, Inc. and San Diego Gas and Elec. Co.

Andrew P. Miller, Milton B. Whitfield, and J. Bradley Ortins, Dickstein, Shapiro & Morin, Washington, D.C. on brief for appellee States Del., Iowa, La., N.D., R.I. and W.Va.

Neil F. Hartigan, Atty. Gen., and Michael J. Hayes, Deputy Atty. Gen., Chicago, Ill., on brief for appellee State of Ill.

Dave Frohnmayer, Atty. Gen., and Donald C. Arnold, Chief Counsel, Dept. of Justice, Salem, Or., on brief for appellee State of Or.

Bernard Nash, and Edward G. Modell, Washington, D.C. on brief for appellee States Hawaii, Ill., Kan., Neb., Nev., N.C., Guam and the Virgin Islands.

James F. Flug, and Paula Dinerstein, Lobel, Novins, Lamont & Flug, Washington, D.C. on brief for appellee States Ala., Cal., Conn., Idaho, Ind., Md., Mich., Miss., Montana, Ohio, S.D., Vt., Wis. and Wyo.

Leroy S. Zimmerman, Atty. Gen., Eugene F. Waye, and James A. Donahue, III, Deputy Attys. Gen., Harrisburg, Pa., on brief for appellee Com. of Pa.

Don W. Crockett, and Paul M. Geier, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., and John R. Bolton, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, on brief for appellee U.S. Dept. of Energy.

Before GARZA, HOFFMAN and MAXWELL, Judges.

GARZA, Chief Judge:

Before this court is an appeal from a second denial of intervention in *Getty Oil Company v. United States Department of Energy* by the United States District Court for the District of Delaware. Six oil-con-

suming electric utilities (the "Utilities")[1] have filed a second motion to intervene in the proceedings reviewing the Department of Energy's ("DOE") decision concerning restitution of crude oil overcharges by Getty Oil Company ("Getty"). Undaunted by the first denial of intervention, the Utilities have filed a second motion asserting their right to intervene in order to appeal the denial of class certification by DOE's Office of Hearings and Appeals ("OHA").

## I. BACKGROUND

This case originated with a 1977 Remedial Order finding Getty liable for crude oil price overcharges. *Getty Oil Company,* 1 DOE ¶ 80,102, 80,538 (1977). The district court affirmed the OHA's finding of liability and ordered that payment be made to the United States Treasury. *Getty Oil Co. v. Department of Energy,* 569 F.Supp. 1204, 1220 (D.Del.1983), *aff'd as modified,* 749 F.2d 734 (Temp.Emer.Ct.App.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1176, 84 L.Ed.2d 325 (1985). On appeal, this court ordered that the district court retain control of the funds pending distribution, directed DOE to consider appropriate distribution of the funds and otherwise affirmed the district court. *Getty Oil Co. v. Department of Energy,* 749 F.2d 734, 739 (Temp. Emer.Ct.App.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1176, 84 L.Ed.2d 325 (1985).

In April 1985, the Philadelphia Electric Company ("PECO") and other end-users of petroleum products sought to intervene both in the proceedings before the district court and in the proceedings before OHA. By letter of June 12, 1985 to Philip Kalodner, Esq., then counsel to PECO and current counsel to the proposed intervenors, OHA allowed PECO to participate in the proceedings on its own behalf, but refused to allow them to participate as class representatives. On July 8, 1985, PECO and the

others again filed for class certification before OHA in the Getty proceedings.

Meanwhile, in Kansas, parties to the *Stripper Well* litigation entered into a settlement agreement on May 5, 1986. The agreement provided that funds from those crude oil price overcharges were to be distributed to three groups. Twenty percent (20%) was reserved for distribution to parties approved by OHA, with the remaining eighty percent (80%) divided equally between the states and the federal government. As a party to this agreement, PECO waived the right to recover in any other crude oil enforcement actions brought by DOE.[2]

In its July 17, 1986, decision and order in *Getty,* OHA adopted the policy of *Stripper Well* and reserved 20% of the funds for private parties while denying PECO's motion for class certification. *Getty Oil Company,* 14 DOE ¶ 83,033, 86,276–77, 86,284–85 (1986).

In January 1987, the same Utilities involved in the present motion, as well as others, filed a motion to intervene in the remedial proceedings before the district court. In their opening brief filed the next month, the proposed intervenors asserted that they were entitled to intervene both as a matter of right and permissively, under Fed.R.Civ.P. 24(a)(2) and (b).[3] On August 21, 1987, the district court denied both intervention of right and permissive intervention, but granted the Utilities status as *amici curiae.* In September 1987, the Utilities appealed the district court decision and filed this second motion to intervene.

In the first appeal, this court determined that the appellants had no direct, substantial, legally protectable right which would entitle them to intervene. *Getty Oil Company v. Department of Energy,* 865 F.2d 270 (Temp.Emer.Ct.App.1988). This court went on to find "[the Utilities'] interest to

---

**1.** The *Utilities* are Consolidated Edison Co. of New York, Inc., Southern California Edison Co., Long Island Lighting Co., Pacific Gas & Electric Co., Orange and Rockland Utilities Inc., and San Diego Gas and Electric Co.

**2.** This agreement was approved by the District Court on July 7, 1986 and became effective

August 7, 1986. *In re The Department of Energy Stripper Well Exemption Litigation,* 653 F.Supp. 108, 121 (D.Kan.1986).

**3.** There is no statutory right of intervention involved herein; therefore Rule 24(a)(1) is inapplicable.

be adequately represented by the parties [therein], for those parties share the same ultimate goal of distribution of overcharge funds to all injured claimants, parties and nonparties alike. Moreover, to the extent [the Utilities] believe that their interests have not been adequately represented, they have been able to present those views to the court in the form of *amicus* briefs." *Id.* at 276.

Following this court's decision on the first motion, the appellants filed a Petition for Rehearing and a Suggestion of Appropriateness of Rehearing en Banc. In these filings, the appellants asserted *new facts,* claiming that in light of the DOE's decisions awarding Pacific Gas & Electric Co. and Southern California Edison Co. refunds based on their prior purchases, this court erred in finding no right to intervene. The appellants also maintained that, if denied intervention, they would not receive full restitution due to the increasing number of claims. Both the Petition and the Suggestion were denied by Order of this court issued on November 28, 1988.

This second motion to intervene was filed after the first was denied but before this court's decision on the first appeal. In the second motion, appellants are seeking to intervene in order to appeal the refusal by DOE's OHA to certify a class of electric utilities in the administrative remand of this case. Further, the appellants conceded that although their present motion seeks to intervene in order to appeal the denial of class certification, their actual goal is party status on the disbursement issue in order that they may appeal any unfavorable ruling.

The appellants assert on appeal that the district court abused its discretion in denying their motion as "untimely" and abused its discretion in refusing to find inadequate representation by the DOE and substantially new and different factual evidence.

## II. ANALYSIS

### A. *Intervention of Right*

A nonparty must meet each of the following requirements to intervene as a matter of right:

(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978).

In order to have the right to intervene, the appellants must satisfy all four prongs of the test. This court has previously found (1) no direct, substantial, legally protectable interest exists, (2) that any existing interest is sufficiently protected by *amicus* briefs, and (3) that the Utilities interests are adequately represented by the DOE. Further, the district court specifically found this particular motion to be "untimely." Appellant must not rebut merely one of these findings but all four.

Under the "law of the case" doctrine, an issue once determined by a court is conclusive in that case and may not be relitigated absent unusual circumstances.[4] In order for the court to depart from a prior ruling under the "law of the case" doctrine, the court would have to be convinced that the prior ruling was clearly erroneous and would work a manifest injustice. *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983). The district court properly applied the law of the case doctrine in its analysis and found neither a clearly erroneous ruling nor a manifest injustice in the works.

---

**4.** "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters re- liance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).

Assuming, arguendo, that any one of the Utilities assertions contains even a marginally colorable claim, we will entertain each separately. Noting, however, that the failure of any prong would result in an affirmation of the district court's dismissal.

### i. Sufficient Interest

The question of sufficient interest was decided by this court and the district court in this case previously.[5] Appellants asserted new facts previously noted and urge that the determination should be reconsidered. However, the district court did not find these facts sufficient to justify a reconsideration. We find that the district court did not abuse its discretion in that determination.

The appellants also assert that the new fact of the number of claims rising from 8% to 15% presents a material change and demonstrates the inadequacy of the 20% allowed for private parties under the stipulated disbursement order. The district court correctly concluded that this issue belongs in the briefs on the disbursement issue and does not relate to the Utilities' right to intervene.

### ii. Impairment of Ability to Protect Interest

In the first motion to intervene, the district court considered this prong and determined that *amicus* briefs would guard against any impairment, especially in light of the absence of a direct, substantial, legally protectable interest. The new facts asserted by appellants do not change that determination and are certainly not sufficient to meet the high burden required under the "law of the case" doctrine. Consequently, the district court acted well within its discretion.

### iii. Inadequate Representation

The district court properly determined that the representation by the DOE coupled with the *amicus* briefs would provide adequate representation. We find that the district court properly considered the new

assertions and decided the issue under the "law of the case" doctrine.

### iv. Timeliness

This prong is a new determination with each and every motion and does not fall within the "law of the case" doctrine. Whether a permissive intervention or one of right, Rule 24 requires the application be timely. *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973). A determination of timeliness is made considering all the circumstances. *Id.* at 366, 93 S.Ct. at 2603. Factors to consider include the stage of the proceeding at the time of the proposed intervention, and the prejudice any delay would cause the parties. *Lelsz v. Kavanagh*, 710 F.2d 1040, 1043 (5th Cir.1983); *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3rd Cir.1982); *United States v. American Telephone and Telegraph Co.* ("AT & T"), 642 F.2d 1285, 1295 (D.C.Cir.1980). In addition, a court may consider prejudice to the proposed intervenor caused by the denial of intervention. *Lelsz*, 710 F.2d at 1043; *AT & T*, 642 F.2d at 1295. Relevant factors also include: the reason for the delay, *Fine Paper*, 695 F.2d at 500; the point at which the intervenor had knowledge of the need to intervene, *Lelsz*, 710 F.2d at 1043; *AT & T*, 642 F.2d 1294–95; and the purpose of the intervention, *AT & T*, 642 F.2d at 1294.

The issues of the stage of the proceeding, lapse of time and the purpose of the intervention are closely related and considered together. In *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 394–96, 97 S.Ct. 2464, 2467, 2469–71, 53 L.Ed.2d 423 (1977), the Supreme Court upheld a motion to intervene filed eighteen days after the entry of final judgment by the district court. The proposed intervenor was a member of a putative class denied class certification by the district court and sought to intervene in order to appeal the denial of class certification. *Id.* at 389–90, 97 S.Ct. at 2467. She only learned of the named plaintiff's intention not to appeal the denial after the final judgment was entered. *Id.* The Court noted that as soon

---

5. *Getty Oil Company v. Department of Energy,* 865 F.2d 270 (Temp.Emer.Ct.App.1988).

as the proposed intervenor became aware that her interests were no longer adequately protected, she moved to intervene within the appeal limits. *Id.* at 394, 97 S.Ct. at 2469. In another case, the United States Court of Appeals for the District of Columbia upheld a motion that was filed within the time for appeal and less than one month after the proposed intervenor became aware that the named party could not assert the work product privilege claimed by the proposed intervenor. *AT & T*, 642 F.2d at 1289–90, 1295. Similarly, the United States Court of Appeals for the Seventh Circuit upheld the denial of a motion to intervene filed four and a half months after the entry of a decree. *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984).

In a motion filed fourteen months after OHA entered its final decision and order, the Utilities seek to intervene in order to appeal OHA's denial of class certification. The Utilities, however, were aware at the time of the *Stripper Well* agreement in May 1986 that PECO would not be able to appeal the denial of class certification in *Getty*. Additionally, in the first motion to intervene filed in January 1987, the Utilities formally acknowledged that they were aware of the class certification issue. Although no time limit has been set for appeals from the OHA to the district court, an administrative appeal to the Federal Energy Regulatory Commission must be filed within thirty days. 10 C.F.R. § 205.199D(i)(1). In addition, any appeal of a decision of the district court to this Court must be filed within thirty days.[6] In light of these standards and the Utilities' less than diligent pursuit of their right to intervene, we find the district court's classification of this motion as "untimely" to be both charitable and accurate, but find the court's classification as "excessive and inexcusable" to be more appropriate.

The Utilities also assert that they delayed in filing the present motion to intervene because they relied on PECO, who had been granted party status by OHA, to protect their interests. This court has stated "[w]hen a party decides to forego taking action in a lawsuit in the expectation that another party will protect its interest, it does so at its peril." *New York Petroleum Corp. v. Ashland Oil, Inc.*, 757 F.2d 288, 292 (Temp.Emer.Ct.App.1985). Immediately upon learning of OHA's first denial of class certification in June 1985, the Utilities could have moved to intervene before OHA, but they did not. In addition, the Utilities knew that the *Stripper Wells Agreement*, entered into in May 1986, required that PECO withdraw from participation in *Getty*.

The Utilities also based their decision not to seek intervention to appeal the denial of class certification in their first motion to intervene, on the hope that a favorable outcome in that motion would make this motion unnecessary. Further, their delay has now caused prejudice to other parties, who were compelled to expend time and energy on this meritless motion to intervene. The joint stipulation on disbursement submitted by the DOE and the States has been ready for decision since May, but has been delayed by these actions.

## CONCLUSION

Our review of the legal bases upon which appellants assert their right to intervene confirms the district court's careful analysis and decision that appellants lack the requisite interest, are adequately protected in the interest, if any, they possess, and filed this motion in a most untimely fashion. Although they may have the right to assert a claim outside this proceeding, they have no direct interest in this court action. Despite their lack of right to intervene in this lawsuit, the district court permitted appellants to be heard through their *amicus* briefs.

Accordingly, the decision of the district court to deny appellants' motion to intervene is in all things AFFIRMED.

---

**6.** Temporary Emergency Court of Appeals Rule 15.