131 F.3d 1475
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Long Island
Lighting Company, Orange And Rockland Utilities, Inc.,
Pacific Gas & Electric Co., San Diego Gas & Electric Co.,
Southern California Edison Co., Champion
Internationalcorporation, Federal Paperboard Company, Inc.,
Internationalpaper Company and Weyerhauser Company,
Plaintiffs-Appellants,
v.
Hazel O'LEARY, Secretary of Energy and George B. Breznay,
Director, Office of Hearing and Appeals,
Department of Energy, Defendants-Appellees,
and
Chevron U.S.A. Inc., Defendant-Appellee.
 No. 97-1242.
 United States Court of Appeals,
Federal Circuit.
 Dec. 12, 1997.
 
 Philip P. Kalodner, of Gladwyne, Pennsylvania, argued for plaintiffs-appellants.
 Paul T. Michael, Department of Energy, of Washington, DC, argued for defendants-appellees. With him on the brief were Stephen C. Skubel and Gilbert T. Renaut.
 Robert M. Westberg, Pillsbury Madison & Sutro LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief was Robert B. Gex.
 James F. Flug, Ingersoll and Bloch, Chartered, of Washington, DC, for amici curiae. With him on the brief was Paula Dinerstein.
 Before MAYER, SCHALL, and BRYSON, Circuit Judges. BRYSON, Circuit Judge.
 BRYSON, Circuit Judge.
 
 
 1
 This case calls on us to decide whether interested private parties may obtain judicial review of a decision by the Department of Energy not to bring enforcement proceedings against another private party. Acting through its Office of Hearings and Appeals, the Department of Energy refused the request of the Economic Regulatory Administration, another component of the Department of Energy, to issue a remedial order against defendant-appellee Chevron U.S.A. Inc. The remedial order would have required Chevron to make restitutionary payments for violations of regulations issued pursuant to the Emergency Petroleum Allocation Act of 1973 (EPAA), Pub.L. No. 93-159, 87 Stat. 627-35. The appellants, a group of private utilities and paper manufacturers who hoped to share in any recovery that might result from the enforcement proceeding, filed an action in the United States District Court for the District of Columbia to seek review of the decision by the Office of Hearings and Appeals and ultimately to compel the Department of Energy to institute enforcement proceedings against Chevron. The district court denied relief, holding that the appellants lacked standing to challenge the decision of the Department of Energy not to institute enforcement proceedings. We affirm.
 
 
 2
 * The Economic Regulatory Administration was the office within the Department of Energy that was responsible for enforcing the mandatory price and allocation regulations issued by the Department under the authority of the EPAA and its predecessor, the Economic Stabilization Act of 1970(ESA), Pub.L. No. 91-379, 84 Stat. 799. The Economic Regulatory Administration would investigate alleged EPAA violations and issue proposed remedial orders (PROs) to firms or individuals believed to have violated the EPAA regulations. If the subject of a PRO wished to contest the alleged violation, it could obtain an evidentiary hearing before the Office of Hearings and Appeals, the office to which the Secretary of Energy delegated the authority to assess PROs and determine whether to issue remedial orders.
 
 
 3
 In March 1992, the Economic Regulatory Administration issued a PRO to Chevron. See 10 C.F.R. § 205.192(b). The PRO alleged that during the period of petroleum price controls that ended in 1981, Chevron had received excess revenue from a Department of Energy program known as the Tertiary Incentive Program and that it should be required to disgorge that excess revenue, with interest.
 
 
 4
 Under the Tertiary Incentive Program, oil producers were eligible for financial benefits if they engaged in tertiary recovery projects, i.e., projects using methods such as thermal, chemical, or miscible gas processes to recover crude oil that could not be recovered by conventional means or through secondary recovery techniques. The benefits to the oil producers included the right to sell at market prices, rather than at controlled prices, sufficient crude oil to recover the expenses of the tertiary recovery projects.
 
 
 5
 As provided by Department of Energy regulations, the Office of Hearings and Appeals reviewed the PRO to determine whether a remedial order should issue against Chevron. See 10 C.F.R. §§ 205.193-.199B. The Office of Hearings and Appeals permitted the appellants to participate in the proceedings before it. Following briefing and a limited evidentiary hearing, the Office of Hearings and Appeals issued a decision accompanied by a lengthy written opinion, in which it concluded that the PRO issued to Chevron could not be sustained. Accordingly, the Department of Energy did not issue the remedial order sought by the Economic Regulatory Administration. Pursuant to the regulatory scheme, the decision of the Office of Hearings and Appeals not to issue a remedial order brought the proceeding against Chevron to an end.
 
 
 6
 Dissatisfied with the decision of the Office of Hearings and Appeals, the appellants filed an action in the United States District Court for the District of Columbia seeking an order directing the Office of Hearings and Appeals to issue the requested remedial order against Chevron or, in the alternative, directing the Secretary of Energy to issue the remedial order directly. In a brief memorandum decision, the district court dismissed the complaint. The court ruled that it could not review the decision not to issue the remedial order, because the appellants "lack standing to challenge the result of a public enforcement proceeding." This appeal is taken from the district court's order dismissing the complaint.
 
 II
 
 7
 We agree with the district court that private parties have no right to judicial review of a decision by the Office of Hearings and Appeals not to issue a remedial order in a proceeding under the ESA or the EPAA.
 
 
 8
 * Four statutes are pertinent to this issue: sections 209, 210, and 211 of the ESA, which were incorporated into the EPAA, and section 503 of the Department of Energy Organization Act (DOEOA), 42 U.S.C. § 7193. Section 209 of the ESA provides a mechanism for public enforcement, allowing the Secretary of Energy to seek injunctive or restitutionary relief against individuals or organizations that have violated any regulation or order promulgated under the authority of the ESA or the EPAA. Section 210 provides a private remedy in district court to "[a]ny person suffering legal wrong because of any act or practice arising out of [the ESA or the EPAA] or any order or regulation issued pursuant thereto." Section 211 gives district courts exclusive original jurisdiction "over cases or controversies arising under [the ESA], or under regulations or orders issued thereunder." Finally, section 503 of the DOEOA, 42 U.S.C. § 7193(a), provides an alternative mechanism for enforcement of the regulations, rules, or orders promulgated under the EPAA. It provides that the Secretary of Energy may issue a remedial order to a person believed to have committed a violation. The recipient of the remedial order may obtain independent administrative review of the order by the Federal Energy Regulatory Commission, see 42 U.S.C. § 7193(c); 10 C.F.R. § 205.199C; 18 C.F.R. § 385.914, followed by judicial review in a United States district court, see 42 U.S.C. §§ 7193(c), 7192.
 
 
 9
 The statutory scheme creates a clear distinction between the public enforcement mechanisms of section 209 and section 503, and the private rights created under section 210. Enforcement of EPAA regulations under section 209 through remedial orders "is the exclusive right of the government," Ashland Oil, Inc. v. United States Dep't of Energy, 760 F.2d 298, 303 (Temp.Emer.Ct.App.1985), and "private parties have no interest in a public enforcement action" that will be impaired by the disposition of that action, Getty Oil Co. v. Department of Energy, 865 F.2d 270, 275-76 (Temp.Emer.Ct.App.1988). Conversely, the private cause of action under section 210 of the ESA "is the exclusive remedy for private litigants." Consolidated Edison Co. v. O'Leary, 117 F.3d 538, 544 (Fed.Cir.1997). The Temporary Emergency Court of Appeals emphasized the independence of these separate statutory remedies, repeatedly cautioning against "[t]he commingling of private and agency enforcement devices for which Congress has made separate provision." Dyke v. Gulf Oil Corp., 601 F.2d 557, 567 (Temp.Emer.Ct.App.1979); see also Getty Oil Co., 865 F.2d at 275; Payne 22, Inc. v. United States, 762 F.2d 91, 93 (Temp.Emer.Ct.App.1985); Cities Serv. Co. v. Department of Energy, 715 F.2d 572, 574 (Temp.Emer.Ct.App.1983).
 
 
 10
 The independence of the public and private remedies is underscored by the holdings of the Temporary Emergency Court of Appeals that an enforcement proceeding under section 209 is neither a prerequisite nor a bar to a private action under section 210. See Cities Serv. Co., 715 F.2d at 574 (outcome of an agency enforcement action has no effect on private right to sue for damages); Bulzan v. Atlantic Richfield Co., 620 F.2d 278, 282-83 (Temp.Emer.Ct.App.1980) (entry of a remedial order does not foreclose private action under section 210); see generally Ashland Oil, Inc., 760 F.2d at 303 (private rights under section 210 do not include the ability to enforce a remedial order).
 
 B
 
 11
 The appellants base their asserted right to review in this case on their potential interest in the funds that would be recovered from a successful enforcement proceeding. The Petroleum Overcharge Distribution and Restitution Act (PODRA), 15 U.S.C. § 4501 et seq., requires the Secretary of Energy to identify persons who have been harmed by a violation of the EPAA regulations and to use recovered funds to make restitution "to the maximum extent possible." See 15 U.S.C. § 4502. Restitution proceedings are conducted in accordance with the so-called "Subpart V" procedures, see 10 C.F.R. §§ 205.280-.288, which provide a mechanism by which persons allegedly injured by a particular violation may provide proof of the nature and degree of their injury. The Office of Hearings and Appeals is responsible under the Subpart V procedures for determining the amount to be paid to a particular claimant. Large users of petroleum products, such as the appellants here, are typically entitled to a substantial share of any recovery made by the Department of Energy.
 
 
 12
 The appellants cite several cases in which parties dissatisfied with the decision of the Office of Hearings and Appeals denying a refund request were able to obtain judicial review of that decision. See, e.g., Mid-America Dairymen, Inc. v. Herrington, 878 F.2d 1448 (Temp.Emer.Ct.App.1989); Florida Rock Indus. v. Herrington, 700 F.Supp. 605 (D.D.C.1988). The appellants argue that the right to judicial review of a denial of an allocation pursuant to the Subpart V regulations necessarily implies a right to judicial review of an agency decision not to issue a remedial order at all. That argument, however, misapprehends the difference between the initiation of a public enforcement action, which is committed to the discretion of the Secretary of Energy, and the distribution of the proceeds of such an action, which is mandated by PODRA and governed by the Subpart V regulations.
 
 
 13
 Although PODRA confers certain rights on parties seeking refunds under Subpart V, those rights do not include the right to judicial review of discretionary decisions made by the Secretary of Energy prior to the refund proceedings. In Mullins v. United States Department of Energy, 50 F.3d 990, 992-93 (Fed.Cir.1995), a refund claimant sought to challenge the amount of a settlement entered into by the Secretary with an accused violator. Even though the size of the settlement affected the amount of funds available for distribution to Subpart V claimants, this court held that the decision whether to settle and on what terms "remain[ed] one peculiarly the province of the executive, not the judiciary." Id. at 993. Similarly, in Consolidated Edison Co. v. O'Leary, 117 F.3d at 544-45, the court rejected the appellants' challenge to the Secretary's decision to settle a $1.1 billion claim against Texaco for $275 million, even though the settlement had a direct effect on the amount of funds that would be allocated to the plaintiffs in the Subpart V proceedings. The court characterized the decision to settle an enforcement action as "a matter committed to the discretion of the agency." Id. at 545. Because Subpart V claimants do not have a right under PODRA to challenge the Secretary's decision to settle with an accused violator or the terms of that settlement, it follows a fortiori that the appellants here cannot use the restitutionary mandate of PODRA to challenge a decision not to issue a remedial order, which is a discretionary decision made even earlier in the enforcement process.
 
 
 14
 Nor does the reference to restitution in section 209 give the appellants a right to judicial review of the Secretary's decision not to issue a remedial order. The decision of the Temporary Emergency Court of Appeals in Getty Oil Co. v. Department of Energy, 865 F.2d 270 (Temp.Emer.Ct.App.1988), is instructive on that point. In that case, private purchasers of petroleum products sought to intervene in a section 209 enforcement action in order to challenge the distribution of funds from that proceeding. Because the funds at issue in that case were specifically excluded from PODRA, the private parties relied on the mandate of restitution in section 209 as a source of their legal interest in the action. The court, however, rejected that argument, noting that the court "has consistently held that governmental enforcement actions brought under section 209 of the ESA are separate and distinct from the actions of private entities brought pursuant to section 210, and are not to be mingled in one proceeding." 865 F.2d at 275. The court further explained that "[a] private party's 'right' to some benefit as a consequence of the overall restitution of petroleum overcharges does not confer a legal right to intervene in a DOE action seeking enforcement of public rights. Such an enforcement of a remedial restitution is the exclusive right of the government." Id.
 
 
 15
 Although the Getty Oil case dealt with intervention rather than the right of review, the court's analysis is nonetheless pertinent. The appellants in this case contend that they have legal rights in the Department of Energy's enforcement proceeding because of their potential interest in a portion of any restitutionary recovery that might flow from a successful enforcement action. That, however, was precisely the interest that the private parties in Getty Oil invoked as the basis for their asserted right to intervene in the enforcement proceedings at issue in that case, an argument that the court rejected. The court concluded that the fact that a private party may be affected by the outcome of a public enforcement proceeding is not enough to give the private party a right to participate in that proceeding. The same analysis leads us to conclude that the appellants have no right to challenge the grounds on which the Department of Energy has declined to initiate a public enforcement action by issuing a remedial order.
 
 
 16
 The sole authority supporting the appellants' position in this case is the district court decision in Fort Pierce Utilities Authority v. Department of Energy, 503 F.Supp. 1014 (D.D.C.1980). In that case, the district court held that a private party had the right to intervene in a proceeding before the Office of Hearings and Appeals. The court based its decision on its conclusion that the private party would have the right to seek judicial review of a decision by the Office of Hearings and Appeals not to issue a remedial order. The decision in the Fort Pierce case, however, has not stood the test of time. Not only have the decisions of the Temporary Emergency Court of Appeals cited above cast doubt on the proposition that a private party may seek judicial review of the Department of Energy's decision not to bring an enforcement action, but even the district judge who decided the Fort Pierce case has abandoned the rationale underlying Fort Pierce, ruling that a private party does not have the right to challenge a decision of the Federal Energy Regulatory Commission dismissing a Department of Energy enforcement action. See Alabama v. Federal Energy Regulatory Comm'n, Civil Action No. 94-347 (D.D.C. June 8, 1995); Consolidated Edison Co. v. O'Leary, Civil Action No. 94-352 (D.D.C. June 8, 1995).
 
 C
 
 17
 The appellants acknowledge that if the Secretary of Energy decided not to bring an enforcement action in a particular case, interested third parties would not be entitled to challenge that decision in court. The case is different, the appellants argue, when the Secretary of Energy delegates to a body such as the Office of Hearings and Appeals the decision whether a remedial order should issue. In the context of this case, the appellants concede that the decision of the Economic Regulatory Administration not to issue a PRO is unreviewable. They contend, however, that the decision of the Office of Hearings and Appeals not to issue a remedial order, while not reviewable at the behest of the Secretary of Energy, is reviewable at the behest of private parties who claim to be among the prospective beneficiaries of any recovery that might result from a successful enforcement proceeding.
 
 
 18
 There is no legal basis for the appellants' proposed distinction between action by the Secretary or the Economic Regulatory Administration, which is conceded to be unreviewable, and action by the Office of Hearings and Appeals, which is asserted to be reviewable. The Secretary of Energy has "full procedural discretion" in determining whether enforcement proceedings should be brought and how to structure the enforcement mechanism within the Department of Energy. See Atlantic Richfield Co. v. United States Dep't of Energy, 769 F.2d 771, 789 (D.C.Cir.1984). By creating two internal entities within the Department of Energy, the Economic Regulatory Administration and the Office of Hearings and Appeals, to investigate and ascertain whether a remedial order should be filed, the Secretary has added internal protections for prospective targets of the enforcement action, thereby making the exercise of discretion more public and, presumably, more rational. But the creation of such internal rights for alleged violators does not create a correlative right for third parties to have district courts review the substance of the internal decisionmaking process when that process results in a decision not to seek enforcement.
 
 
 19
 Contrary to the appellants' contention, the exercise of enforcement discretion ends, and the adjudication of the alleged violation begins, after the Office of Hearings and Appeals issues the Department's remedial order, not after the Economic Regulatory Administration issues its proposed remedial order. The legislative history makes this point clear, as the Conference Committee report on the DOEOA notes that the task of reviewing the remedial order was committed to the Federal Energy Regulatory Commission in order to "guarantee[ ] a separation of the prosecutorial and judicial functions relating to enforcement." See H.R. Conf. Rep. No. 95-539, at 85 (1977), reprinted in 1977 U.S.C.C.A.N. 925, 956. Thus, Congress contemplated that those procedures leading up to the issuance of the remedial order would all be part of the "prosecutorial" function of the Secretary of Energy.
 
 D
 
 20
 Relying on the Fort Pierce case, the appellants argue in part that their right to appeal the decision of the Office of Hearings and Appeals derives from section 211 of the ESA, which gives federal district courts "exclusive original jurisdiction of cases or controversies arising under this title." As that language makes clear, however, section 211 does not create a cause of action not otherwise provided for. Instead, like its counterpart in the DOEOA, 42 U.S.C. § 7192, section 211 simply confers jurisdiction on federal district courts to hear cases or controversies arising under the ESA, i.e., cases for which a cause of action is elsewhere provided.
 
 
 21
 The district court in Fort Pierce relied on McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd., 577 F.2d 712 (Temp.Emer.Ct.App.1978), to support its conclusion that section 211 conferred substantive rights on a party to challenge agency action. McCulloch, however, merely confirms that when a party has a preexisting right to judicial review by virtue of its receipt of a remedial order, section 211 gives the district court jurisdiction to consider the matter. Contrary to the suggestion by the district court in the Fort Pierce case, nothing in section 211 purports to create a cause of action over which the district courts may exercise their section 211 jurisdiction.
 
 E
 
 22
 The appellants point out that they were permitted to participate in the proceedings before the Office of Hearings and Appeals, and that private parties have been allowed to intervene in administrative and court proceedings to defend remedial orders after such orders have been issued. Those practices, according to the appellants, indicate that they have a sufficient interest in the issuance of a remedial order to permit them to mount a judicial challenge to the decision of the Office of Hearings and Appeals in this case. The principles underlying the agency's intervention practices, however, are entirely different from the principles that apply in the present context. The Office of Hearings and Appeals is free to permit third parties to participate in proceedings before it, for such assistance as those parties may offer, without creating a right in those parties to review a negative decision that the Office may ultimately make. See Pittsburgh & W. Va. Ry. Co. v. United States, 281 U.S. 479, 486, 50 S.Ct. 378, 380-81, 74 L.Ed. 980 (1930); PepsiCo, Inc. v. Federal Trade Comm'n, 472 F.2d 179, 186 (2d Cir.1972). And a court may permit third parties to intervene in an action challenging an issued remedial order, over which the court clearly has jurisdiction, without creating a right in those parties to review a decision not to issue a remedial order, for which the court has no statutory or other source of jurisdiction.
 
 F
 
 23
 Citing the D.C. Circuit's decision in Oil, Chemical & Atomic Workers International Union v. Occupational Safety & Health Review Commission, 671 F.2d 643 (D.C.Cir.1982), which permitted a union to challenge in court an unfavorable ruling of the Occupational Safety and Health Review Commission, the appellants argue by analogy that they should be permitted to challenge in court an unfavorable decision of the Office of Hearings and Appeals. The analogy, however, is not persuasive. First, the court in the Oil Workers case was dealing with a very different statutory scheme, in which, as the court decided, the union was intended to have rights of judicial review of adverse decisions of the Commission. Second, the Occupational Safety and Health Review Commission is an independent adjudicative agency within the Department of Labor. In that respect, it is analogous to the Federal Energy Regulatory Commission, an independent agency within the Department of Energy. It is not analogous to the Office of Hearings and Appeals, which is a creature of regulation and a delegee of a portion of the Secretary's enforcement authority. The Oil Workers case is therefore no authority for the proposition that a disappointed private party can appeal from a decision by the Office of Hearings and Appeals not to issue a remedial order.
 
 G
 
 24
 Finally, the appellants invoke the presumption of judicial review of agency action, which they say grants them the right to challenge the decision of the Office of Hearings and Appeals in the absence of a clear and explicit statutory provision precluding such review. The presumption of reviewability, however, does not apply to an enforcement decision, as the Supreme Court made clear in Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). The Court in that case noted that the presumption of reviewability applies to "an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given," but that "[r]efusals to take enforcement steps generally involve precisely the opposite situation, and in that situation we think the presumption is that judicial review is not available." Id. at 831, 105 S.Ct. at 1655. As the Court observed, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion," id., and "should be presumed immune from judicial review," id. at 832, 105 S.Ct. at 1656. That presumption can be rebutted, the Court added, but only if the substantive statute being administered withdraws discretion from the agency and provides guidelines for the agency's exercise of its enforcement power. Id. at 833-34, 105 S.Ct. at 1656-57. "The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress." Id. at 834, 105 S.Ct. at 1657.
 
 
 25
 Although Heckler v. Chaney was decided under the Administrative Procedure Act, which does not apply to ESA-EPAA enforcement proceedings, see 42 U.S.C. § 7192(a), the general principles that the Supreme Court set out in Heckler v. Chaney are nonetheless pertinent here. Neither section 209 of the ESA nor section 503 of the DOEOA purports to limit in any way the discretion of the Secretary of Energy in making charging decisions. To the contrary, the discretion granted to the Secretary in each statute is couched in language that could hardly be broader. Section 209 provides that the Secretary "may request the Attorney General" to bring an enforcement action in court "whenever it appears " to the Secretary "that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title." Pub.L. No. 92-210, § 2, 85 Stat. 743, 748 (1971) (emphasis added). Section 503 likewise provides that if the Secretary "believes that a person has violated any regulation, rule or order" promulgated under the EPAA, "he may issue a remedial order to the person." 42 U.S.C. § 7193(a) (emphasis added). Because the statutes that describe the Secretary's charging discretion do not purport to confine that discretion in any way, we conclude that the presumption of unreviewability that the Supreme Court described in Heckler v. Chaney is fully applicable here and requires rejection of the appellants' quest for judicial review of the Secretary's decision not to issue a remedial order against Chevron.
 
 
 26
 AFFIRMED.