233 F.3d 1376 (Fed. Cir. 2000)
 CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., LONG ISLAND LIGHTING COMPANY, ORANGE AND ROCKLAND UTILITIES, INC., SOUTHERN CALIFORNIA EDISON COMPANY, PACIFIC GAS & ELECTRIC COMPANY, SAN DIEGO GAS & ELECTRIC COMPANY, INTERNATIONAL PAPER COMPANY, FEDERAL PAPER BOARD COMPANY INC., CHAMPION INTERNATIONAL CORPORATION, and WEYERHAUSER COMPANY, Plaintiffs-Appellants,
v.
Bill Richardson, SECRETARY OF ENERGY, and George B. Breznay, DIRECTOR, OFFICE OF HEARINGS AND APPEALS, DEPARTMENT OF ENERGY, Defendants-Appellees.
 99-1436
 United States Court of Appeals for the Federal Circuit
 DECIDED: November 29, 2000
 
 Appealed from: United States District Court for the District of Columbia Judge Emmet G. Sullivan[Copyrighted Material Omitted]
 Philip P. Kalodner, Gladwyne, Pennsylvania, argued for plaintiffs-appellants.
 Thomas H. Kemp, Attorney, Office of General Counsel, U.S. Department of Energy, of Washington, DC, argued for defendants-appellees.
 Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and PLAGER, Circuit Judge.
 PLAGER, Circuit Judge.
 
 
 1
 This is a further chapter in the long-running story of how to divide up the billions of dollars recovered by the Government as a result of the price controls on petroleum products enacted by Congress in the 1970s. Consolidated Edison Co. of New York, Inc. and a group of other companies (collectively "Plaintiffs") challenge an award made by the Department of Energy ("DOE") to Chesebrough Pond's USA Co. ("Chesebrough"). The award is a refund of overcharges paid by Chesebrough for crude oil supplies, and is to be paid from monies the Government collected from the producers/suppliers of the crude oil.
 
 
 2
 The United States District Court for the District of Columbia held for the Government, dismissing the suit under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, on the grounds that Plaintiffs lacked standing to challenge the award to a third party. The trial court also denied Plaintiffs' request for certification as a class action. SeeConsol. Edison Co. of N.Y. v. Pena, Civil Action No. 97-2213 (D.D.C. Mar. 31, 1999). Plaintiffs appeal that dismissal to this court, pursuant to 28 U.S.C. § 1295(a)(11), (12) (1994), this court's inherited Temporary Emergency Court of Appeals ("TECA") jurisdiction. Because the district court erred in dismissing the action, we reverse, and remand for further proceedings.
 
 BACKGROUND
 
 3
 The history and consequences of Congress's attempt in 1973 to control petroleum prices through the medium of the then-existing Economic Stabilization Act are set out in detail in this court's 1997 opinion, Consolidated Edison Co. of New York v. O'Leary, 117 F.3d 538 (Fed. Cir. 1997) (Con Ed I). See also Consol. Edison Co. of N.Y. v. O'Leary, 131 F.3d 1475 (Fed. Cir. 1997) (Con Ed II). Briefly, this case revolves around application of the Economic Stabilization Act Amendments of 1971, Pub. L. No. 92-210, 85 Stat. 743 (codified at 12 U.S.C. § 1904 note (1976)) ("ESA"),[1] as incorporated into the Emergency Petroleum Allocation Act of 1973, Pub. L. No. 93-159, 87 Stat. 627 (codified at 15 U.S.C. §§ 751-760h (1982)) ("EPAA"). The EPAA placed price controls on petroleum products, both refined and crude, during the 1970s. The EPAA authorized DOE to collect overcharge amounts from petroleum producers/suppliers who overcharged customers for petroleum products while the price controls were in effect, and to provide refunds of these monies to those harmed by the overcharges. See 15 U.S.C. § 754(a)(1) (incorporating ESA § 209). The pool of money collected has turned out to be quite substantial--more than enough to fight over.
 
 
 4
 Once monies are acquired by DOE from a producer who has violated the price controls, the monies are allocated among several fund pools pursuant to established percentages. There are separate pools for individual claimants and for state and federal governments; the individual claimant pools are further differentiated between crude oil consumers and refined petroleum product consumers. All of this is governed by a rather complex scheme administered by the DOE Office of Hearings and Appeals ("OHA").
 
 
 5
 The formula for distributing monies from the pools for individual claimants is a volumetric formula. In a volumetric formula, the total amount of money in the pool constitutes the numerator of the formula, while the total volume of U.S. consumption of the petroleum product during the period of price controls is the denominator. The resulting fraction is then multiplied by the individual claimant's volumetric consumption to produce the resulting refund. As a consequence, any decrease in the size of the pool (for example, because some of it is paid to another claimant) directly reduces the share of each claimant.[2] At present, there appear to be some 90,000 companies or groups with claims to the pool. Plaintiffs here have, in aggregate, verified claims to approximately 10% of the pool.
 
 
 6
 This case arose when, in July 1997, DOE awarded Chesebrough $930,603 from the pool allocated for crude oil claimants. Plaintiffs appealed the award to the district court, claiming that the amount was excessive and not supported by the evidence of record. Plaintiffs asserted that they had standing to challenge the award to Chesebrough because the volumetric formula under which the refund pool is administered means that any award to Chesebrough will necessarily reduce the award to all other claimants to the pool, including Plaintiffs. Plaintiffs also alleged that they represented a class consisting of all those entitled to a part of the pool for crude oil claimants, other than Chesebrough, and requested certification of this class.
 
 
 7
 The district court declined to certify the case as a class action, and subsequently dismissed the case for lack of standing. The refusal to certify is set forth in a single document, which appears to be a modified version of an order supplied by Plaintiffs in which "GRANT" is replaced by "DENY." As such, it provides no discussion of the reasons for the denial.
 
 
 8
 On the merits, the district court looked to the precedents involving these same plaintiffs, which without exception had found reasons why Plaintiffs' claims were properly dismissed. The court concluded that, consistent with those precedents, Plaintiffs lacked standing to challenge an award to a third party. The district court therefore dismissed the case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Plaintiffs appeal the rulings of the district court.
 
 DISCUSSION
 I.
 
 9
 Dismissal for lack of standing is a question of law, and we therefore review the holding of the trial court on this issue without deference. See Tex. Am. Oil Co. v. Dep't of Energy, 44 F.3d 1557, 1566 (Fed. Cir. 1995). We review a denial of class certification for abuse of discretion. Califano v. Yamasaki, 442 U.S. 682, 703 (1978); Adashunas v. Negley, 626 F.2d 600, 605 (7th Cir. 1980).
 
 II.
 
 10
 To put the present case into perspective, we must first review the history of four prior cases, the four cases that lie at the heart of the parties' arguments. In the first case, DOE in 1992 entered into a settlement with Texaco, a producer, under which the agency recovered a substantial sum of money. The settlement included an understanding as to how the monies were to be allocated between funds for claimants who purchased crude oil and those who purchased refined petroleum products. That allocation scheme was challenged in a suit brought by a group of gasoline retailers seeking to protect the refined products pool. The district court dismissed the suit. On appeal to TECA, that court held the allocation scheme was subject to judicial review, and the question of whether the scheme was lawful was remanded to the district court. Mullins v. United States Dep't of Energy, 964 F.2d 1149, 1150 (Temp. Emer. Ct. App. 1992) (Mullins I). Neither the plaintiffs nor the Government had raised a question of the plaintiffs' standing to bring the suit.
 
 
 11
 In the second case, in a subsequent appeal to this court (which had by then succeeded to TECA's jurisdiction) after the remand, we upheld, over the gasoline retailers' objections, the allocation arrived at by DOE. We concluded that the allocation, reached as part of the Government's settlement with Texaco, was a litigation judgment call by the Government that we, like the trial court, would not second-guess. Mullins v. United States Dep't of Energy, 50 F.3d 990, 992-93 (Fed. Cir. 1995) (Mullins II). Again, standing of the retailers to challenge the settlement's allocation was not questioned.
 
 
 12
 The third case was decided two years later. In Consolidated Edison Co. of New York v. O'Leary, 117 F.3d 538 (Fed. Cir. 1997) (Con Ed I), we reviewed DOE's allocation of recovered funds between, on the one hand, individual claims (including both refined and crude pools), and, on the other, reimbursements to state and federal governments. DOE had determined, following the settlement in the Stripper Wells litigation (In re Dep't of Energy Stripper Well Exemption Litig., 653 F. Supp. 108 (D. Kan. 1986)), that 20% of recovered monies should be allocated for the individual claims, and 80% for government claims (split evenly between the federal government and state governments). The allocation was challenged by a group of companies, essentially the same ones as are before us today, with an interest in protecting the fund for individual claimants.
 
 
 13
 The district court dismissed the complaints for lack of standing. We upheld the district court's judgment for the Government, but chose not to rest our decision on standing. Instead, we held that ESA § 210, the private attorney-general provision, did not authorize plaintiffs to state a private cause of action on which relief could be granted with regard to the overall allocation of funds recovered under § 209, the public enforcement section. Con Ed I, 117 F.3d at 544. We further held that, pursuant toMullins II, the plaintiffs' challenge failed with regard to the specific distribution of funds (between the private and government entities) received as a result of the settlement in the particular case, as that allocation was a matter committed to the discretion of the agency. Id. at 545.
 
 
 14
 Later that same year the fourth case was decided. In Consolidated Edison Co. of New York v. O'Leary, 131 F.3d 1475 (Fed. Cir. 1997) (Con Ed II), the question was whether private parties, again the same companies as are before us today, may obtain judicial review of a decision by DOE not to bring enforcement proceedings against another private party. The trial court denied relief, holding that the appellants lacked standing. This court affirmed the judgment of the trial court, but again declined to rest on standing grounds. We noted the distinction "between the initiation of a public enforcement action, which is committed to the discretion of the Secretary of Energy, and the distribution of the proceeds of such an action . . . ." Id. at 1479. We held that whatever rights the law accords to private party claimants under the fund, they do not include the right to judicial review of discretionary decisions made by the Secretary of Energy prior to the refund proceedings. Id.
 
 III.
 
 15
 Plaintiffs assert that they have stated a claim upon which relief can be granted and that they have standing to appeal because if Chesebrough does not get the money, the money will go back into the pool and thus increase Plaintiffs' share. As a result, argue Plaintiffs, they have sufficient stake in the outcome to confer standing. DOE counters that Plaintiffs have not stated such a claim and that as third parties, they have no standing to appeal the award to Chesebrough.
 
 A.
 
 16
 The parties focus their attention on the four cases discussed above: Mullins I, Mullins II,Con Ed I, and Con Ed II. Plaintiffs rely on the Mullins decisions to support their argument that they have standing to pursue the present action, analogizing their position here to that of the retailers in Mullins. Plaintiffs argue that, since both TECA and this court held, at least implicitly, that the Mullins retailers had standing to contest the allocation among the pools in that case, they have standing to challenge the distribution of the pool in the present action. Plaintiffs particularly focus on one statement in the dissent in Mullins II: "Energy does not, however, have unfettered discretion to decide how to allocate this restitution. Congress provided that interested parties may appeal such decisions to the district courts, and that any appeal from a district court's decision will be had to the Federal Circuit." 50 F.3d at 993 (Archer, C.J., dissenting) (citations omitted). Plaintiffs note that the majority did not challenge that proposition, and therefore the decision supports their contention that they have standing to pursue the present action. Plaintiffs further note that neither in Con Ed I or Con Ed II did this court rest its decision on standing, and that the decisions in those cases implicitly undercut the bases for the respective district courts' rulings of lack of standing.
 
 
 17
 DOE counters with citation to Con Ed I. DOE alleges that Con Ed I is "squarely controlling" and thus we should affirm based on that authority. DOE argues that the plaintiffs in Con Ed I failed to state a claim when they attempted to challenge the distribution of overcharge recovery proceeds between public entities and private entities. According to DOE, the present suit fails to state a claim because it also challenges DOE's distribution of overcharge recovery proceeds. DOE further maintains that the distinction between public action pursuant to ESA § 209 and private action pursuant to § 210 that we made in Con Ed I is equally applicable to the present situation.
 
 B.
 
 18
 We find that none of the cited cases are directly on point, and therefore they do not control the outcome here. In the two Mullins cases, the issue was the allocation, between the refined products pool and the crude oil pool, of recovered overcharges under a settlement. In Con Ed I, the issue was the allocation, between the individual claimants and the government claimants, of recovered overcharges, both generally and under the particular settlement involved. All three of these cases involved discretionary decisions by the DOE with regard to how to implement the statutory requirement that producers who overcharged customers be required to make recompense.
 
 
 19
 Again, in Con Ed II, the issue was with regard to recovery of overcharges--whose decision was it whether and how to pursue a particular supplier charged with violating the price controls. In none of these cases was the issue the one presented here: After a fund is established, and monies are recovered for distribution, how is the amount that is to be distributed to an individual claimant to be determined?
 
 
 20
 The central thread in all the cited cases was that the action challenged was a discretionary matter of broad public policy, or was otherwise particularly committed to the discretion of the agency. Such broad judgment calls, presenting no factual issues as such, are singularly unsuitable for judicial oversight, as there are no clearly evident standards by which the actions can be judged. See Mullins II, 50 F.3d at 992-93 ("[Some decisions are] peculiarly within the province of the executive, and not the judiciary [and as such] do not lend themselves to traditional notions of judicial review."). By contrast, the question presented here is a fact-based determination--to what is the claimant entitled under the law? And the answer to that question is of direct and immediate concern to all other claimants in the fund, since the finite amount in the fund determines what each claimant ultimately gets.
 
 
 21
 The present case raises the question whether DOE has properly followed its own procedures in awarding a specific refund amount to a particular claimant, and whether the evidence supports the amount of the award. As such, it implicates no particular broad policy considerations that are peculiarly within the province of the agency. Indeed, reviewing whether an agency has followed its own procedures, and whether the evidence supports a particular result reached by the agency, are exactly the sort of issues that courts routinely review in this type of proceeding. Cf. Mullins II, 50 F.3d at 992-93 (rejecting challenge to agency decision because it "does not involve factual matter[s] as such" and hence "do[es] not lend [itself] to traditional notions of judicial review").
 
 
 22
 We find the public action/private action distinction made in Con Ed I and Con Ed II inapposite. This distinction merely reflected the concern that courts should not interfere with the agency's actions in implementing broad policies, as discussed above. In contrast, the present action is based on post-enforcement distribution of the proceeds. The initiation of the action and the amount of the penalty obtained under § 209 are not at issue here; those issues are settled, and only distribution remains. Furthermore, the present battle is over a large, co-mingled pool of funds that DOE obtained from a wide variety of different violators. Cf. Con Ed I, 117 F.3d at 545 (referring to the non-justiciability of "the allocation between various funds of moneys received from an individual violator" (emphasis added)).
 
 
 23
 Finally, we note that the public action/private action language of Con Ed I and Con Ed II cannot sensibly be read as broadly as DOE suggests. To do so arguably would preclude dissatisfied claimants from challenging their own awards. For example, Con Ed I framed the issue as "whether a private complaint states a claim upon which relief may be granted when the complaint challenges the allocation of funds obtained under the public remedies section of the Act." 117 F.3d at 543. Under a broad reading, challenging one's own award would literally be "challeng[ing] the allocation of funds obtained under the public remedies section of the Act." However, as Plaintiffs point out, cases permitting such a challenge are clearly contemplated under ESA § 211, and indeed these cases have been permitted to proceed. See, e.g., Goodyear Tire & Rubber Co. v. Dep't of Energy, 118 F.3d 1531 (Fed. Cir. 1997); Mid-America Dairymen Inc. v. Herrington, 878 F.2d 1448 (Temp. Emer. Ct. App. 1989). We therefore decline to extend the public action/private action distinction made in Con Ed I and Con Ed II to encompass the present situation.
 
 
 24
 We conclude that, unlike the plaintiffs in the Mullins, Con Ed I, and Con Ed II cases, Plaintiffs here have stated a claim on which relief can be granted.
 
 C.
 
 25
 That conclusion brings us to the related question that was explicitly not reached in Con Ed I and Con Ed II: Do Plaintiffs, as third parties, have standing to challenge DOE's award to Chesebrough? We note that for the present discussion, we treat as true the facts as alleged by Plaintiffs, as we must given the posture of the case; Plaintiffs will still have the burden of proving such facts at trial.
 
 
 26
 In general, a plaintiff does not have standing to challenge an agency's action regarding a third party, the underlying theory being that the plaintiff cannot show that it was harmed by such an action. See, e.g., Allen v. Wright, 468 U.S. 737 (1984); Simon v. E. Ky. Welfare Rights Org., 423 U.S. 943 (1975); Atl. Richfield Co. v. Dep't of Energy, 618 F. Supp. 1199, 1213 n.21 (D. Del. 1985). However, Plaintiffs allege that this case presents a special circumstance. Rather than an award from the general funds of the United States, which is what would typically be at issue in cases involving challenges of awards to third parties, the present case revolves around a pro rata distribution of a limited pool of funds. Under the volumetric formula used to distribute the funds, an award to any claimant automatically decreases the funds available to all other claimants; the limited pool must be split among the claimants, with each claimant getting its appropriate share. Errors resulting in an excessive distribution come at the expense of all the other claimants. In the present case, DOE has already determined that Plaintiffs are proper claimants, entitled to a share of the pool. Thus, to the extent that the award to Chesebrough was excessive, the excess comes directly out of the awards to Plaintiffs. Under these particular circumstances, Plaintiffs should be entitled to challenge the award to Chesebrough.
 
 
 27
 We recognize that this opens the door to the possibility of an endless series of challenges to awards, resulting in interminable delays in closing the book on this effort at government intervention in the marketplace. We think that such further delays are unlikely, since it is now over twenty years since the events at issue occurred, and it is in the interest of all claimants to have their claims paid as promptly as possible.[3] Only when a large claim is involved and there is clear evidence of error would it pay a claimant to litigate an award to another. Should the opportunity to protest an award be abused, we have every confidence that the trial courts will be able to control the matter, even to the imposition of appropriate sanctions on the plaintiffs and their counsel.
 
 
 28
 We hold that Plaintiffs have standing to challenge the award to Chesebrough. We note that this holding is consistent with the Mullins cases, which, while not directly addressing the issue, implicitly found standing to challenge awards to third parties in light of the volumetric formula used by DOE to distribute the awards. It is also consistent with the general presumption of review of agency action. See, e.g., Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967) ("[A] survey of our cases shows that judicial review of a final agency action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."); Heckler v. Chaney, 470 U.S. 821, 831 (1985) ("The action at least can be reviewed to determine whether the agency exceeded its statutory powers."); cf. Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1986) (finding standing to challenge agency's failure to act against a third party).
 
 
 29
 On remand, fuller development of the facts may reveal that Plaintiffs lack a sufficiently clear interest to enable them to pursue the present action. If so, the action may be dismissed at that time. On the present record, however, Plaintiffs have alleged sufficient interest in the agency's action to survive the motion to dismiss and to receive a hearing on the merits.
 
 D.
 
 30
 One final point should be addressed. DOE seems to suggest that Plaintiffs somehow forfeited their claim when they did not intervene before the agency when it was deciding on Chesebrough's award (perhaps intending to imply that Plaintiffs failed to exhaust their administrative remedies). As Plaintiffs point out, such intervention would have been effectively impossible. First, DOE provides no advance notice of hearings, only of subsequent awards, and so Plaintiffs had no way of knowing in advance about the Chesebrough proceeding. Second, DOE has made more than 90,000 award determinations regarding the overcharge fund. Demanding that Plaintiffs intervene in all these proceedings in order to protect their rights is clearly not a reasonable requirement. Finally, we note that there is no mechanism by which Plaintiffs could subsequently have gone before the agency to challenge the award directly; once the award was made to Chesebrough, Plaintiffs' only recourse was to file the present suit in the district courts under ESA § 211. Thus, we reject DOE's implicit suggestion that Plaintiffs somehow failed to protect their rights by not intervening before the agency. We decline to comment on what effect, if any, there would be if the agency decided to provide a structured opportunity for claimants to participate in the proceedings of other claimants.
 
 IV.
 
 31
 Plaintiffs further contend that they meet all requirements for class certification under Fed. R. Civ. P. 23, and therefore the district court erred when it failed to certify the class. We review the district court's denial of the motion to certify for abuse of discretion. As noted, the district court provided no reasons for its denial. Plaintiffs present an argument for certification that is at least facially plausible. We are reluctant to affirm without knowing the district court's grounds for denial. Although Fed. R. Civ. P. 52 does not require it, when the district court is presented with conflicting positions as to how to exercise its discretion in determining whether to certify a class action, sound practice strongly suggests giving the litigants and a reviewing court at least a minimum explanation of the reasons for its decision. Accord Interspace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971). We therefore vacate the district court's denial of the motion to certify and remand the issue for further development.
 
 CONCLUSION
 The decision of the district court is
 
 32
 REVERSED-IN-PART, VACATED-IN-PART, and REMANDED.
 
 
 
 NOTES:
 
 
 [1]
 Because the entire ESA is codified at 12 U.S.C. § 1904 note, this opinion cites the individual sections of the ESA as "ESA § __."
 
 
 [2]
 For a more detailed discussion of the volumetric formula, see Mullins v. United States Dep't of Energy, 964 F.2d 1149, 1150 (Temp. Emer. Ct. App. 1992); Con Ed I, 117 F.3d at 541.
 
 
 [3]
 At oral argument, counsel for Plaintiffs indicated that most of the more than 90,000 claims have already been processed and are beyond challenge. Of the awards on the processed claims, only two were the subjects of judicial challenges.