CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Plaintiffs,

v.

Federico PENA, Secretary of Energy, et al., Defendants.

No. CIV.A.97–2213 EGS.

United States District Court, District of Columbia.

July 21, 2004.

Philip P. Kalodner, Gladwyne, PA, for Plaintiffs.

Stephen Chester Skubel, Thomas Halsey Kemp, U.S. Department of Energy, Washington, DC, for Defendants

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

On March 31, 1999, this Court granted defendants' Motion to Dismiss plaintiff's complaint, finding that plaintiffs lacked standing to challenge a Department of En-

ergy ("DOE") award to a third-party from a statutorily-established common fund. *See Consolidated Edison Co. v. Peña*, Civ. Action No. 97–2213, at 10 (D.D.C. Mar. 31, 1999). On appeal, the Federal Circuit reversed, holding that the answer to the question "to what is the claimant entitled under the law?" was of "direct and immediate concern to all other claimants in the fund," giving the plaintiffs standing to challenge the award. *Consolidated Edison Co. v. Richardson*, 233 F.3d 1376, 1382 (Fed.Cir.2000) ("*Consolidated Edison III*").

The Federal Circuit described the questions presented by the case alternatively as: (1) "After a fund is established, and the monies are recovered for distribution, how is the amount that is to be distributed to an individual claimant to be determined?" *Id.* at 1381; and (2) "whether DOE has properly followed its own procedures in awarding a specific · refund amount to a particular claimant, and whether the evidence supports the amount of the award?" *Id.* at 1382. The latter question best frames the inquiry on remand, where this Court faces the parties' cross motions for summary judgment and plaintiffs' motion to certify a class under Fed.R.Civ.P. 23(b)(2).

## II. Background

The plaintiffs are ten of the 95,000 companies that the Department of Energy's Office of Hearings and Appeals ("OHA") has found are entitled to crude oil refunds under the statutory scheme established by the amendments to the Economic Stabilization Act of 1971, Pub.L. No. 92–210, 85 Stat. 743 (1971), as incorporated into the Emergency Petroleum Allocation Act of 1973, Pub.L. No. 93–159, 87 Stat. 627 (1973). Pls.' Statement of Material Facts ¶ 4. Stated succinctly, the statutes created a scheme in which the DOE collected

funds from petroleum producers and suppliers that had overcharged customers while price controls were in effect. DOE then divided the acquired funds among pools for private claimants as well as federal and state governments. The pool for individual claimants was further divided into crude oil consumers and refined petroleum product consumers. *See Consolidated Edison III*, 233 F.3d at 1378–79.

Under the volumetric formula for calculating the distribution of recovered funds, plaintiffs here would receive approximately 12.5% of the recovered funds. Because "any increase in the size of the total consumed volume ... reduces the volumetric and thus directly reduces the share of each claimant," plaintiffs allege that the improper award to another recipient, Chesebrough, potentially deprives them of more than $116,000. *Id.* at 1379.

In an earlier unrelated proceeding, the Department of Energy ("DOE") collected thirty-seven million dollars in a settlement with Exxon and distributed those funds nationwide to various purchasers. *See* Defs.' Mot. at 7. As part of that proceeding, Exxon submitted a "Record of Purchases" Report ("Report" or "Exxon Report") chronicling Chesebrough's purchases from Exxon between 1977 and 1981. Initially, Chesebrough was unwilling to accept the amount identified in the Report, saying it believed the number to be "erroneous" and requesting an extension of time in order to review its own records. Pls.' Statement of P & A at 4. When filing its claim in the Exxon proceedings, Chesebrough left blank the space for volume consumed, noting "apparent inaccuracies" in the Report. *Id.* at 4–5. Chesebrough later sent a letter, noting that it "could not account for the volume of purchases set forth" in the Report. *Id.* at 5. Nevertheless, the company acquiesced to the use of the Report figure

in early 1990, and that figure was used to calculate Chesebrough's award of $187,000, which was promulgated on April 18, 1990. Defs.' Mot. at 7. Since the settlement, no one has either challenged the volumes provided by Exxon or appealed the award to Chesebrough. Defs.' Statement of Material Facts at ¶ 4.

In 1997, Chesebrough filed an application for a refund of crude oil overcharges pursuant to the statutory scheme adopted by Congress in the 1970's and 1980's, described briefly above, and discussed at length in this Court's March 31, 1999, Memorandum Opinion and the Federal Circuit's opinion on appeal. *See Consolidated Edison Co. v. Peña,* Civ. Action No. 97–2213, at 2–5 (D.D.C. Mar. 31, 1999); *Consolidated Edison III,* 233 F.3d at 1378–79. Chesebrough based its claim on purchases of gasoline, motor oil, and petrolatum. *See* OHA 1997 Decision and Order, RF272–97101, at 2. The Department of Energy's Office of Hearings and Appeals ("OHA") concluded that Chesebrough was not an end-user of petrolatum and that the company had submitted no proof that it had been injured by systematic overcharges. *Id.* at 3–4. OHA thus denied Chesebrough's claim in part. OHA also refused to award Chesebrough a refund on the 2.2 million gallons of gasoline it asserted having purchased from suppliers other than Exxon. In doing so, OHA stated that Chesebrough had produced no documents demonstrating that it had purchased the gasoline. *Id.* at 4. However, relying on the Exxon Report on which the DOE had based its 1990 award to Chesebrough, OHA awarded Chesebrough a $930,603 refund. *Id.*

### III. Discussion

The Federal Circuit has instructed that the principal issue for this Court to consider is "whether the evidence supports the amount of the award?" *Consolidated Edison III,* 233 F.3d at 1382. In other words, is there "sufficient evidence in the record to explain" OHA's decision to award Chesebrough $930,603? *Mullins v. Department of Energy,* 50 F.3d 990, 992 (Fed.Cir. 1995) ("*Mullins I*"); *see also id.* at 994 ("While an agency need not make detailed factual findings to support its actions under this standard, the agency's rational basis must be evident in the administrative record . . .") (Archer, C.J., dissenting).

Both parties agree that the proper standard of review of DOE's decision is set out in *Phoenix Petroleum Co. v. U.S. F.E.R.C.,* where the Federal Circuit explicitly adopted the standard of review previously employed by the Temporary Court of Emergency Appeals. 95 F.3d 1555, 1566–67 (Fed.Cir.1996). According to the Federal Circuit, a reviewing "court will set aside an EPAA/ESA agency action only if it is in excess of the agency's authority, or is based upon findings [that] are not supported by substantial evidence." *Id.* at 1567. The court elaborated, "We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it." *Id.*

Plaintiffs challenge OHA's reliance on the Exxon Report as a basis for calculating Chesebrough's award by arguing that Chesebrough's refusal to rely on the Exxon Report in 1990 and Chesebrough's initial statement that the Report was "erroneous" are evidence that the Report was inaccurate. Thus, plaintiffs conclude, OHA's reliance on an inaccurate Report is irrational.

Defendants argue that Chesebrough might have initially characterized the Exxon Report as "erroneous" because it *undervalued* the company's purchases. Defs.' Mot. at 7. Defendants also argue

that it is equally plausible that Chesebrough might have been hesitant to adopt the Exxon numbers because they were based on the years 1977–1981 and thus did not cover the entire eight-year period. *Id.*

Resolution of these intricate arguments is not, however, necessary. Indeed, this Court's duty is not to conduct an extensive factual inquiry but instead to ascertain "whether the evidence supports the amount of the award," *Consolidated Edison III*, 233 F.3d at 1382, while "recogniz[ing] DOE's administrative expertise" and "accord[ing] the agency's determination great deference." *Phoenix Petroleum*, 95 F.3d at 1567.

In this regard, the Court is persuaded that OHA had a rational basis for its decision. *See id.* None of the current parties dispute that the Exxon Report has not been questioned by any of the parties involved in the Exxon settlement. While plaintiffs are correct that they had no reason to challenge that award, it does not reduce the significance of the apparently undisputed fact that *no one,* not even those parties with a clear interest, has challenged the Exxon settlement as either fraudulent or erroneous.

In addition to noting that no one has challenged the Exxon Report, the Court finds that Exxon would have no incentive to *overvalue* its sales in the Report. In settling the amount it had overcharged customers during the period covered by the federal plan, Exxon had every incentive to *undervalue* its sales as much as possible. Thus, it appears to this Court that the DOE's use of the Exxon Report in making its determination was rational and should not be disturbed.

### IV. Conclusion

The Federal Circuit acknowledged that its holding "open[ed] the door to the possibility of an endless series of challenges to awards . . ." issued by DOE but expressed "confidence that the trial courts will be able to control the matter." *Consolidated Edison III*, 233 F.3d at 1383. Deciding this case at the summary judgment stage is fully consistent with the Federal Circuit's exhortation to "control" litigation challenging agency refunds awarded under a well-established system. *See id.*

Plaintiffs here argue that Cheseborough's award was unsubstantiated and irrational. However, absent some showing that the agency does not normally give credence to third-party reports or that the agency had reason to suspect fraud or deception, plaintiffs have failed to establish that they are "entitled to judgment as a matter of law." Fed.R.Civ.P. 56. In contrast, because defendants have shown that the agency had sufficient evidence before it and a rational basis for making its ruling, the Court grants their motion for summary judgment. Having found that the DOE decision should not be disturbed, there is no need to reach plaintiffs' Motion to Certify a Class. Thus, plaintiffs' Motion will be denied as moot.

An appropriate Order and Judgment accompanies this Memorandum Opinion.